ACCEPTED
03-15-00325-CV
6891639
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/11/2015 3:05:40 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00325-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
9/11/2015 3:05:40 PM
JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

_____

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION**
*Appellant*,

**v.**

**JESSICA LUKEFAHR**
*Appellee*.

_____

On Appeal from the 345th Judicial District Court
of Travis County, Texas
Cause No. D-1-GN-14-002158
The Honorable Stephen Yelenosky Presiding

_____

## ~~AMENDED~~ APPELLANT'S BRIEF

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

**ORAL ARGUMENT REQUESTED**
**September 11, 2015**

KARA HOLSINGER
Assistant Attorney General
State Bar No. 24065444
OFFICE OF THE ATTORNEY GENERAL
OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 475-4203
Facsimile:   (512) 320-0167
kara.holsinger@texasattorneygeneral.gov

COUNSEL FOR APPELLANT

## IDENTITIES OF PARTIES AND COUNSEL

**Defendant/Appellant:  Texas Health & Human Services Commission**

**Counsel:**

Kara Holsinger
Assistant Attorney General
State Bar No. 24065444
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone:  (512) 475-4203
Facsimile:   (512) 320-0167
kara.holsinger@texasattorneygeneral.gov


**Plaintiff/Appellee:  Jessica Lukefahr**

**Counsel:**

Maureen O'Connell
Texas Bar No.  00795949
Southern Disability Law Center
1307 Payne Avenue
Austin, Texas 78757
Phone:  512-458-5800
Fax:  512-458-5850
moconnell458@gmail.com

# TABLE OF CONTENTS

Identities of Parties and Counsel.................................................................. ii

Table of Contents ..................................................................................... iii

Table of Authorities ...................................................................................v

Glossary of Abbreviated Terms ............................................................. viii

Statement of the Case..................................................................................1

Statement Regarding Oral Argument ........................................................2

Issues Presented ..........................................................................................2

Statement of Facts ......................................................................................3

I.    Procedural History ..........................................................................3

II.   Exceptional Circumstances Review ...............................................6

Summary of the Argument........................................................................11

Argument and Authorities........................................................................112

I.    Standard of Review........................................................................12

II.   Applicable Law and Policy............................................................14

III.  The District Court Erred in Reversing HHSC's Decision Affirming the Denial of a Custom Power Wheelchair with an Integrated Standing Feature because Substantial Evidence Showed that Covered Durable Medical Equipment would meet Ms. Lukefahr's Medical Needs...............................18

      A.    Substantial evidence in the record showed that a static stander would meet Ms. Lukefahr's medical need to stand........................................18

B.    Additionally, durable medical equipment that is covered by Texas Medicaid meets Ms. Lukefahr's other medical needs as expressed in the exceptional circumstances request ...............................................22

       i.    Substantial evidence in the record showed that covered durable medical equipment would meet Ms. Lukefahr's medical need to change positions frequently ........................................................23

       ii.   Substantial evidence in the record showed that covered durable medical equipment would meet Ms. Lukefahr's needs in her activities of daily living ...........................................................24

IV.   The District Court Erred in Reversing HHSC's Decision as Arbitrary and Capricious or in Violation of Due Process because the Hearing Officer and Reviewing Attorney Fulfilled their Duties and Provided Ms. Lukefahr with all Required Due Process...........................................................26

A.    The hearing officer provided all required due process, including making findings of fact supported by the record ...............................26

B.    The reviewing attorney provided all required due process.................29

Prayer ..........................................................................................................31

Certificate of Compliance .............................................................................32

Certificate of Service ....................................................................................33

Appendices....................................................................................................334

Index of Appendices .....................................................................................335

# TABLE OF AUTHORITIES

**CASES**

*Bd. of Law Exam'rs v. Stevens*,
868 S.W.2d 773 (Tex. 1994).................................................... 12, 13, 24

*Bd. of Trs. of Emps. Ret. Sys. v. Benge,*
942 S.W.2d 742 (Tex. App.—Austin 1997, writ denied)..................... 13, 21, 24, 25

*Beal v. Doe*,
432 U.S. 438 (1977)................................................................ 17, 25

*City of El Paso v. Pub. Util. Comm'n*,
883 S.W.2d 179 (Tex. 1994)....................................................13

*Deloitte & Touche LLP v. Fourteenth Court of Appeals*,
951 S.W.2d 394 (Tex. 1997)....................................................14

*Detgen v. Janek*,
752 F.3d 627 (5th Cir. 2014) ..................................................15

*Gulf States Util. v. Pub. Util. Comm'n,*
841 S.W.2d 459 (Tex. App.—Austin 1992, writ denied).......................... 12, 13, 29

*McMullen v. Emps. Ret. Sys.*,
935 S.W.2d 189 (Tex. App.—Austin 1997, writ denied)........................13

*Moore v. Reese*,
637 F.3d 1220 (11th Cir. 2011) ............................................... 17, 25

*Poole v. Karnack Indep. Sch. Dist.*,
344 S.W.3d 440 (Tex. App.—Austin 2011, no pet.)................................12

*Rush v. Parham*,
625 F.2d 1150 (5th Cir. 1980) ................................................17

*State v. Pub. Util. Comm'n*,
883 S.W.2d 190 (Tex. 1994)........................................................................ 12, 13, 22

*Tex. Rivers Prot. Ass'n v. Tex. Natural Res. Conservation Comm'n*,
910 S.W.2d 147 (Tex. App.—Austin 1995, writ denied)............... 13, 18, 20, 21, 28

*Tex. State Bd. of Med. Exam'rs v. Birenbaum*,
891 S.W.2d 333 (Tex. App.—Austin 1995, writ denied)........................................13

*United Copper Indus. v. Grissom*,
17 S.W.3d 797 (Tex. App.—Austin 2000, pet. dism'd)...........................................6

**TEXAS STATUTES**

**Tex. Gov't Code**

Tex. Gov't Code § 2001.174............................................................................ 12, 31

Tex. Gov't Code § 531.019(c) .................................................................................29

Tex. Gov't Code § 531.019(e)(2) ............................................................................29

Tex. Gov't Code § 531.019(g) .................................................................................12

**FEDERAL STATUTES AND REGULATIONS**

42 C.F.R. § 440.230(d) ...........................................................................................17

**RULES**

1 Tex. Admin. Code § 354.1031(12) ........................................................................14

1 Tex. Admin. Code § 354.1039(a)(4)(D) ................................... 2, 3, 6, 15, 21, 23

1 Tex. Admin. Code § 357.1(19) ...............................................................................4

1 Tex. Admin. Code § 357.1(31) ...............................................................................3

1 Tex. Admin Code § 357.5.......................................................................................27

**RULES (continued)**

1 Tex. Admin. Code § 357.5(c) ......................................................................26

1 Tex. Admin. Code § 357.5(c)(3)(A)-(D) ....................................................27

1 Tex. Admin. Code § 357.5(c)(3)(B) ...........................................................19

1 Tex. Admin. Code § 357.703(b)(3) .............................................................30

1 Tex. Admin. Code § 357.9..........................................................................6

1 Tex. Admin. Code § 357.9(1) ......................................................................4

**OTHER AUTHORITIES**

**Texas Medicaid Provider Procedures Manual**

TMPPM § 2.2.2 (2013) ...................................................................................19

TMPPM § 2.2.15.22 (2013) ............................................................................8

# GLOSSARY OF ABBREVIATED TERMS

| | |
|---|---|
| A.R. | Administrative Record |
| C.R. | Clerk's Record |
| DME | Durable Medical Equipment |
| HHSC | Health and Human Services Commission |
| H.R. | Fair Hearing Audio Recording |
| OMD | HHSC's Office of the Medical Director |
| TMHP | Texas Medicaid Healthcare Partnership |
| TMPPM | Texas Medicaid Provider Procedures Manual |

No. 03-15-00325-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

_____

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION**
*Appellant,*

**v.**

**JESSICA LUKEFAHR**
*Appellee.*

_____

On Appeal from the 345th Judicial District Court
of Travis County, Texas
Cause No. D-1-GN-14-002158
The Honorable Stephen Yelenosky Presiding

_____

**APPELLANT'S BRIEF**

_____

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Texas Health and Human Services Commission ("HHSC"), appellant in this cause, and files Appellant's Brief.

**STATEMENT OF THE CASE**

HHSC appeals the district court's final judgment reversing a fair hearing decision that sustained HHSC's denial of appellee Jessica Lukefahr's (Ms. Lukefahr's) exceptional circumstances request for a custom power wheelchair with an integrated standing feature. Administrative Record (A.R.) 563-74; 580-91;

Clerk's Record (C.R.) 226; Appendix A (Final Judgment); Appendix B (Fair Hearing Decision); Appendix C (Administrative Review of the Fair Hearing Decision).

## STATEMENT REGARDING ORAL ARGUMENT

HHSC requests oral argument to aid the Court's understanding of HHSC's review of Ms. Lukefahr's exceptional circumstances request for an item not covered by Texas Medicaid. *See* 1 Tex. Admin. Code § 354.1039(a)(4)(D), Appendix D (exceptional circumstances rule); A.R. 428-31, Appendix E (*Medicaid Program Policy Manual* Exceptional Circumstances Policy).

## ISSUES PRESENTED

1. Whether substantial evidence supports HHSC's decision affirming the denial of Ms. Lukefahr's request for a custom power wheelchair with an integrated standing feature on exceptional circumstances review, since the evidence showed that Ms. Lukefahr's medical needs could be met through the use of equipment covered by Texas Medicaid.

2. Whether HHSC's decision was arbitrary and capricious and a violation of Ms. Lukefahr's due process rights, considering that it was based on findings of fact supported by the record and Ms. Lukefahr received all required due process during the fair hearing and subsequent administrative review.

2

**STATEMENT OF FACTS**

**I.      Procedural History**

Ms. Lukefahr's Durable Medical Equipment ("DME") provider sought prior authorization[1] of a custom power wheelchair with an integrated standing feature (also called a mobile standing feature or power stander) through the Texas Medicaid and Healthcare Partnership ("TMHP"), which administers Texas Medicaid on behalf of HHSC. A.R. 376-399. TMHP denied prior authorization because integrated standers are not a covered benefit of Texas Medicaid and the wheelchair, as requested, could not be ordered without the integrated stander. A.R. 367-369.

Ms. Lukefahr's DME provider then submitted a request for exceptional circumstances review for a custom power wheelchair with an integrated standing feature. A.R. 208-241; *see also* A.R. 71-115, 129-207. To be eligible for the integrated stander under exceptional circumstances review, Ms. Lukefahr was required to show that it could "be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis." *See* 1 Tex. Admin. Code § 354.1039(a)(4)(D); Apps. D-E. However, Ms. Lukefahr was unable to "medically substantiate" that that an integrated stander

---

[1] Prior authorization is a "request for services that is reimbursable only if authorization or approval for the services is obtained before services are rendered." 1 Tex. Admin. Code § 357.1(31).

"would serve a specific medical purpose" in her individual case, and HHSC denied her exceptional circumstances request. A.R. 58-60, Appendix F (exceptional circumstances denial letter to Jessica Lukefahr). The denial letter stated, in part:

> **After reviewing and studying the clinical points of your request and your special medical needs it was found you may have a medical need for a power wheelchair without a standing feature and a static standing system to meet both your medical and mobility needs.** This equipment may be considered for you through Texas Medicaid if requested. **The papers sent failed to support medical necessity for the standing feature (and its parts as part of the power wheelchair requested) or that the standing feature would serve a specific medical purpose for you.** Because the standing feature on the power wheelchair would not serve a specific medical purpose for you, it could not be approved under the exceptional circumstances provision of 1 Texas Administrative Code § 354.1039(a) as requested by your provider. Because the standing feature cannot be separated from the power wheelchair requested the power wheelchair requested could not be approved.

*Id.* (emphasis added).

Ms. Lukefahr then requested a fair hearing regarding the exceptional circumstances denial. A.R. 495-505. A fair hearing is "[a]n informal proceeding held before an impartial HHSC hearings officer in which a client appeals an agency action." 1 Tex. Admin. Code § 357.1(19). At the fair hearing, HHSC had the burden of proof by a preponderance of the evidence. 1 Tex. Admin. Code § 357.9(1). The hearing officer sustained HHSC's denial of the custom power wheelchair with integrated stander, concluding:

4

> Because mobile standers, power standing systems on a wheeled mobility device are not a benefit of Home Health Services and exceptional circumstances for DME were not met, the decision by TMHP on September 12, 2013 to deny Appellant a Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system **WAS** in accordance with applicable law and policy; therefore the agency's action is **SUSTAINED**.

A.R. 572 (emphasis in original); App. B. An administrative review of the fair hearing decision followed, in which the reviewer, an HHSC attorney, upheld the hearing officer's decision and issued a final agency decision adopting the hearing officer's findings of fact and conclusion of law. A.R. 580-591; App. C.

A suit for judicial review followed in which the district court issued a final judgment reversing HHSC's decision and remanding the case to HHSC for further proceedings consistent with the judgment. C.R. 226; App. A. The Court found that HHSC "violated the due process rights of Ms. Lukefahr and the decision denying Plaintiff a custom power wheelchair with integrated standing feature is not supported by substantial evidence and is arbitrary and capricious." *Id*. In a letter announcing his judgment, the district court provided some of the reasons for the decision, stating in part as follows. C.R. 221-24; Appendix G (letter from the district court).

> Due process, as embodied in state and federal Medicaid law, requires that a denial letter provide the reasons for denial. When a denial is challenged, the Medicaid authority has the burden to prove to the Hearings Officer that the reasons given are supported by a preponderance of the evidence. . . The reasons for denial must be a

5

common thread that runs through each of these stages [of review].
Without that, the Medicaid client cannot adequately prepare for a fair
hearing, judicial review, or appeal, and there is no due process.

*Id.* at 221; App. G. Here, the district court reversed HHSC's decision, finding that none of the findings of fact in the fair hearing decision related to the reasons given in the denial letter.[2] *Id*. at 222; App. G. Now, HHSC appeals this final judgment.

## II. Exceptional Circumstances Review

Ms. Lukefahr submitted an exceptional circumstances request for a custom power wheelchair with an integrated standing feature. A.R. 208-241; *see also* A.R. 71-115, 129-207. In order to receive approval for the integrated stander under exceptional circumstances, Ms. Lukefahr was required to show that it could "be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis." 1 Tex. Admin. Code § 354.1039(a)(4)(D); A.R. 428-31; Apps. D-E.

---

[2] The district court elevated the due process required in a Medicaid benefits denial in stating that a denial letter must provide reasons for denial that must be a "common thread" through each stage of the proceedings. C.R. 221; App. G. Rather, traditional due process requirements apply, and Ms. Lukefahr received all required due process, as is discussed herein. *See United Copper Indus. v. Grissom*, 17 S.W.3d 797, 805 (Tex. App.—Austin 2000, pet. dism'd) ("Basic due process requires that when a decision maker is called upon to make a decision grounded on evidence, the parties involved should be provided fair notice and a meaningful opportunity to present their evidence."). And, in a fair hearing, the denial itself must be supported by a preponderance of the evidence, not each reason therefore. 1 Tex. Admin. Code § 357.9. ("The burden of proof in a fair hearing regarding a specific issue is proof by a preponderance of the evidence." "The agency or its designee bears the burden of proof.").

Ms. Lukefahr has been diagnosed with spastic quadriplegia, dystonia, and cerebral palsy. A.R. 76.[3] Due to her medical conditions, Ms. Lukefahr has limited range of motion in her arms, which limits her ability to reach, and has only isolated finger movements with deliberate thought. A.R. 166. Additionally, her muscle strength is limited and her endurance poor, requiring frequent rest breaks. A.R. 83, 87, 166, 170.

Ms. Lukefahr lives independently in a handicapped-accessible apartment and has assistance with her activities of daily living from an attendant. A.R. 82, 168. She has a college degree and works four hours a day, five days per week at a museum. A.R. 82, 168. Ms. Lukefahr can transfer independently to and from her wheelchair using transfer bars.[4] *Id*.; Fair Hearing Audio Recording ("H.R.") 1:45. Ms. Lukefahr's prior authorization request for a custom power wheelchair included requests for seat elevation, tilt and recline feature, leg elevation power function, and transfer bars. A.R. 59, 84, 162-65, 367. There is no dispute that these features are medically necessary for Ms. Lukefahr (and her current wheelchair has these features). A.R. 59, 572; Apps. B, F. Seat elevation, tilt and recline, and leg elevation provide many medical benefits to Ms. Lukefahr, and her physician did

---

[3] Although additional medical conditions were noted in a letter of medical necessity, these are not medical diagnoses as provided by her treating physician. *Compare* A.R. 76 *with* A.R. 88.

[4] Despite stating that Ms. Lukefahr can transfer independently, her physician also asserted that she would require assistance from an attendant to transfer from a wheelchair to a static stander. *Compare* A.R. 82, 168 *with* A.R. 145.

7

not document any evidence of pressure sores or skin breakdown. A.R. 84, 167; H.R. 3:16-3:18.

Patricia Cannizzaro, a registered nurse who reviewed the exceptional circumstances request for TMHP, testified that Ms. Lukefahr has a medical need to stand for one hour a day, five days per week, to strengthen her muscles. AR 145-146, 167, 170, 427; H.R. 2:09.30. Ms. Lukefahr's DME provider stated that she has a postural control walker, but she is only able to use this walker for a few minutes at a time, and it is no longer meeting her medical need to stand. A.R. 145. But, Ms. Lukefahr's DME provider stated that, with the use of a stander, she would be able to stand for thirty or more minutes at a time. A.R. 170.

Donna Clayes, a registered nurse who reviewed the exceptional circumstances request for HSHC's Office of the Medical Director[5] ("OMD") testified that a that a static stander,[6] an item of DME that is covered by Texas Medicaid, would meet Ms. Lukefahr's medical need to stand, and that none of Ms. Lukefahr's medical conditions supported the use of an integrated standing feature rather than a static stander. H.R. 1:16-1:28, H.R. 2:09 (Ms. Cannizzaro testifying to

---

[5] OMD decides exceptional circumstances requests based on a review and recommendation by TMHP and review by an OMD doctor. A.R. 423-27; H.R. 1:00.00. Ms. Clayes testified that she reviewed Ms. Lukefahr's exceptional circumstances request with an OMD doctor, who dictated the findings she used in developing the response to Ms. Lukefahr's request. H.R. 1:07.45.

[6] "A stander is a device used by a client with neuromuscular conditions who is unable to stand alone. Standers and standing programs can improve digestion, increase muscle strength, decrease contractures, increase bone density, and minimize decalcification (this list is not all inclusive)." TMPPM § 2.2.15.22 (2013).

8

the same); A.R. 59, App. F. Ms. Lukefahr's DME provider and treating physician did not try a static stander in order to determine whether a static stander would meet Ms. Lukefahr's medical need to stand, and no prior authorization request for a static stander has been submitted to Texas Medicaid. A.R. 59, 145, 376-99; App. F. Ms. Clayes and Ms. Cannizzaro testified that no documentation was provided to support a finding that an integrated stander was necessary to treat Ms. Lukefahr's chronic pain or bone density loss, improve her respiratory capacity, or reduce spasticity, contractures, constipation, or skin breakdown. A.R. 59, App. F; H.R. 1:16-1:20, 2:49-2:55. Ultimately they testified that the information submitted in support of Ms. Lukefahr's exceptional circumstances request did not support the use of an integrated stander as a treatment for Ms. Lukefahr's medical conditions. H.R. 1:16-1:18, 2:53.

Additionally, an item requested through exceptional circumstances review must be supported by "evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective." A.R. 429; App. E (exceptional circumstances policy). Although Ms. Lukefahr's DME provider submitted articles to support the exceptional circumstances request, Ms. Cannizzaro and Ms. Clayes testified that these were not sufficient to support the need for an integrated stander in Ms.

9

Lukefahr's case. Ms. Cannizarro testified that the 2009 RESNA paper submitted by Ms. Lukefahr's DME provider is merely a position or opinion paper, which concludes only that integrated standers are "medically beneficial" (rather than medically necessary), but that further research is needed. A.R. 147-54; H.R. 1:55-2:00, *see also* H.R. 1:24 (Ms. Clayes also testified that the articles did not rise to the level of "peer-reviewed" literature). And Ms. Cannizarro testified that many of the studies on which the RESNA paper is based were performed using static standers, rather than integrated standers, and did not show that integrated standers in particular have a proven medical benefit. H.R. 1:55-2:09. The claims in the RESNA paper have not been substantiated by evidenced based, peer-reviewed medical studies, and many of the reasons provided to substantiate medical necessity in this case were taken directly from this paper. *Compare* A.R. 147-54 *with* AR 145-46; H.R. 1:55-1:59, 2:04, 2:05.50-2:06.30. Further, Ms. Cannizzaro testified that the study "Load Redistribution in Variable Position Wheelchairs in People with Spinal Cord Injury" submitted by Ms. Lukefahr's DME provider concludes that standing in a static stander or the use of tilt and recline features can prevent skin breakdown by assisting people in wheelchairs to shift their weight, and did not indicate that both were needed. A.R. 155-61; H.R. 2:02. There is no dispute as to the medical necessity of a tilt and recline feature for Ms. Lukefahr. A.R. 58-60, App. F. As such, the documentation provided in support of Ms.

Lukefahr's exceptional circumstances request did not substantiate the need for an integrated stander in her individual case. A.R. 59; App. F.

## SUMMARY OF THE ARGUMENT

TMHP denied Ms. Lukefahr's exceptional circumstances request for a custom power wheelchair with an integrated stander. HHSC's fair hearing decision affirming the denial is supported by substantial evidence because TMHP and OMD registered nurses who reviewed the exceptional circumstances request testified that Ms. Lukefahr's medical needs could be met through the use of DME that is covered by Texas Medicaid.

Additionally, HHSC's decision is not arbitrary and capricious because it is based on findings of fact that are supported by the record. And HHSC did not otherwise violate Ms. Lukefahr's due process rights in denying her exceptional circumstances request because the hearing officer and attorney conducting the administrative review provided Ms. Lukefahr with all due process required. Therefore, the district court erred in reversing the fair hearing decision, and this Court should reverse the district court's judgment and affirm HHSC's denial of the custom power wheelchair with an integrated stander.

11

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

"Judicial review of a decision made by a hearing officer for the commission or a health and human services agency related to public assistance benefits is under the substantial evidence rule and is instituted by filing a petition with a district court in Travis County, as provided by Subchapter G, Chapter 2001." Tex. Gov't Code § 531.019(g); *see also* Tex. Gov't Code § 2001.174 (substantial evidence review under the Administrative Procedure Act). The Court presumes the order is supported by substantial evidence, and Ms. Lukefahr has the burden of proving otherwise. *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.).

It is well established that in applying the substantial evidence test to an agency's decision, the reviewing court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion. *Bd. of Law Exam'rs v. Stevens*, 868 S.W.2d 773, 778 (Tex. 1994; *Gulf States Util. v. Pub. Util. Comm'n,* 841 S.W.2d 459, 474 (Tex. App.—Austin 1992, writ denied). The test for review of an agency action is not whether the agency reached the correct conclusion, but whether some reasonable basis for the agency's action exists in the record. *State v. Pub. Util. Comm'n*, 883 S.W.2d 190, 204 (Tex. 1994). Texas courts have stated that although substantial evidence

is more than a mere scintilla, the evidence may actually preponderate against the agency decision, and yet still amount to substantial evidence supporting the result reached by the agency. *Id*; *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994). The Court must uphold HHSC's Decision in this case "on any legal basis shown in the [administrative] record." *Bd. of Trs. of Emps. Ret. Sys. v. Benge*, 942 S.W.2d 742, 744 (Tex. App.—Austin 1997, writ denied); *accord McMullen v. Emps. Ret. Sys.*, 935 S.W.2d 189, 191 (Tex. App.—Austin 1997, writ denied). As long as a properly supported finding given in the order supports an agency's action, a court will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record. *Tex. Rivers Prot. Ass'n v. Tex. Natural Res. Conservation Comm'n*, 910 S.W.2d 147, 155 (Tex. App.—Austin 1995, writ denied). If reasonable minds could have reached the conclusion that HHSC reached on the record presented, then the Court must uphold HHSC's order. *Stevens*, 868 S.W.2d at 777-78; *Tex. State Bd. of Med. Exam'rs v. Birenbaum*, 891 S.W.2d 333, 337 (Tex. App.—Austin 1995, writ denied).

Further, "to determine if an agency acted arbitrarily and capriciously, even though substantial evidence supports its order or action, we look to see if the order was based on a consideration of all relevant factors." *Gulf States Utils. Co.,* 841 S.W.2d at 474. An agency's exercise of its discretion may only be reversed as arbitrary and capricious if it constitutes a clear abuse of discretion. *State v. Pub.*

13

*Util. Comm'n*, 883 S.W.2d at 201; *see also Deloitte & Touche LLP v. Fourteenth Court of Appeals*, 951 S.W.2d 394, 396 (Tex. 1997) (internal citation omitted) (an Agency's decision amounts to "a clear abuse of discretion" if it is "devoid of any guiding principles of law").

## II.    Applicable Law and Policy

Ms. Lukefahr's DME provider first sought prior authorization of a custom power wheelchair with an integrated standing feature, which is an item of durable medical equipment.[7] But, because integrated standers are not covered under Texas Medicaid, this prior authorization request was denied. Ms. Lukefahr then submitted an exceptional circumstances request for the wheelchair. The denial of this request precipitated the instant case.

Pursuant to HHSC's 2013 Texas Medicaid Provider Procedures Manual ("TMPPM") § 2.2.15.26 "[m]obile standers, power standing system on a wheeled mobility device" are not a benefit of Texas Medicaid." *See also* A.R. 567 (referencing TMPPM § 2.2.15.26), App. B. According to Centers for Medicare and Medicaid Service guidance in the "*DeSario* Letter," HHSC's categorical exclusion of integrated standers is a permissible policy: "A State may develop a list of pre-approved items of ME [Medical Equipment] as an administrative convenience

---

[7] *See* 1 Tex. Admin. Code § 354.1031(12) ("Durable medical equipment--Machinery and/or equipment which meet one or both of the following criteria:  (A) the projected term of use is more than one year; or (B) reimbursement is made at a cost more than $1,000.").

because such a list eliminates the need to administer an extensive application process for each ME request submitted." *See* A.R. 517; Appendix H (the "*DeSario* letter"). The Fifth Circuit Court of Appeals recently confirmed the use of categorical exclusions of certain items of DME from Texas Medicaid benefits in *Detgen v. Janek*, noting that "the state can choose *by definition* to exclude" an item of DME from Medicaid coverage. 752 F.3d 627, 632 (5th Cir. 2014) (emphasis in original), Appendix I (*Detgen* opinion). According to *Detgen*, "[i]t is hardly unreasonable for a state to exclude—even categorically—any medical device whose purpose can be served by a more cost-effective method." *Id*.

States must provide a "reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list." A.R. 517 (*DeSario* Letter); App. H. Texas accomplishes this through exceptional circumstances review: "Medical equipment or appliances not listed in subparagraph (C) of this paragraph [related to covered appliances and equipment] may, in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis." 1 Tex. Admin. Code § 354.1039(a)(4)(D); App. D.

HHSC's Medicaid Program Policy Manual contains a policy for Medicaid Exceptional Circumstances review. A.R. 428-29, App. E. According to this

policy, a provider requesting exceptional circumstances review must include the

following information:

> Providers may invoke the Exceptional Circumstances provision upon written notice to TMHP, provided the written notice meets all of the following conditions. The notice must include:

> 3.1 A completed Home Health Services (Title XIX) DME/Medical Supplies Physician Order Form signed and dated by the prescribing physician;

> 3.2 The client's diagnosis;

> 3.3 A clear, concise description of the DME requested;

> 3.4 Identification of the client's specific medical needs that can only be met by the requested equipment;

> 3.5 Letters of Medical Necessity (LOMN) from the client's clinical professionals documenting alternative measures and alternative DME that have been tried and that have failed to meet the client's medical need(s), or have been ruled out, and an explanation of why it failed or was ruled out;

> 3.6 A minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective.

> NOTE: Marketing materials, brochures, or claims made by the equipment manufacturer do not satisfy this requirement. The articles provided must support the information contained within the LOMN that indicates why the covered DME cannot meet the client's specific medical need(s), and

3.7 Submission of either the manufacturer's suggested retail pricing (MSRP) for the DME requested or an invoice documenting the provider's cost.

*Id.* Ms. Lukefahr provided this information in support of her exceptional circumstances request. A.R. 122 (table of contents of documentation submitted with exceptional circumstances request).

Additionally, both the physician and the State have roles in determining what medical measures are necessary, and the physician's letter of medical necessity is not dispositive. *Moore v. Reese*, 637 F.3d 1220, 1248 (11th Cir. 2011) *citing Rush v. Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980). Further, "a participating state is not required to fund desirable but medically unnecessary services requested by a Medicaid recipient's physician and . . . the Medicaid Act endows participating states with broad discretion to fashion standards for determining the extent of medical assistance, so long as such standards are reasonable and congruous with the purposes of the Act." *Moore*, 637 F.3d at 1244 *citing Beal v. Doe*, 432 U.S. 438, 444 (1977); *see also* 42 C.F.R. § 440.230(d) (under federal Medicaid regulations, the state has the right to place appropriate limits on a service based on such criteria as medical necessity and utilization review).

**III. The District Court Erred in Reversing HHSC's Decision Affirming the Denial of a Custom Power Wheelchair with an Integrated Standing Feature because Substantial Evidence Showed that Covered Durable Medical Equipment would meet Ms. Lukefahr's Medical Needs.**

The district court issued a final judgment, stating, in part, that HHSC's decision denying Ms. Lukefahr's exceptional circumstances request was not supported by substantial evidence. C.R. 226; App. A. In a letter announcing the judgment, the district court stated that there were no findings of fact supporting the decision that were based on reasons for denial provided in the denial letter. C.R. 221-22; App. G. The court was in error, because properly supported findings of fact support the decision. Hence, the decision is supported by substantial evidence. *Tex. Rivers Prot. Ass'n*, 910 S.W.2d at 155 (As long as a properly supported finding given in the order supports an agency's action, a court will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record.).

**A. Substantial evidence in the record showed that a static stander would meet Ms. Lukefahr's medical need to stand.**

HHSC affirmed the denial of Ms. Lukefahr's exceptional circumstances request because the evidence showed that a static stander would meet her medical need to stand. *See* A.R. 59, App. F. In order to have an integrated stander approved for Texas Medicaid coverage, Ms. Lukefahr was required to show that other, covered, DME would not meet her medical needs. A.R. 428, App. E (exceptional

18

circumstances policy). But, registered nurses for TMHP and the OMD testified that a static stander, covered under Texas Medicaid, would meet Ms. Lukefahr's medical need to stand. As such, substantial evidence in the record supports HHSC's decision affirming denial of the integrated stander, and the district court erred in reversing the decision.

The hearing officer determined, and the administrative reviewer affirmed, that "exceptional circumstances for DME were not met" and the decision to deny the integrated stander "**WAS** in accordance with applicable law and policy; therefore, the agency's action is **SUSTAINED**."[8] A.R. 572, 590; Apps. B-C. This conclusion is supported by findings of fact that a static stander would meet Ms. Lukefahr's medical need to stand.

> FINDING OF FACT NO. 5: Appellant does not currently have a static stander for use at her home and was not evaluated for prior authorization of one.
>
> . . .
>
> FINDING OF FACT NO 12: TMHP did not dispute that Appellant met medical necessity criteria for a power wheelchair and static stander or that these items met DME criteria.[9]

---

[8] In addition to other responsibilities, the hearing officer "determines whether the agency's or its designee's action is in compliance with statutes, policies, or procedures." 1 Tex. Admin. Code § 357.5(c)(3)(B).

[9] The hearing officer's finding of fact that Ms. Lukefahr met DME criteria for a power wheelchair and static stander is a finding that these items would meet her medical needs, as covered DME is only eligible for reimbursement if it is "required to correct or ameliorate a client's disability, condition, or illness." TMPPM § 2.2.2 (2013); A.R. 566; App. B.

A.R. 571-72; App. B. Because findings of fact support the hearing officer's decision affirming HHSC's denial of the exceptional circumstances request, the district court erred in reversing this decision as not supported by substantial evidence.[10] *Tex. Rivers Prot. Ass'n*, 910 S.W.2d at 155 (As long as a properly supported finding given in the order supports an agency's action, a court will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record.).

The findings and conclusion are supported by evidence in the record. TMHP's letter denying Ms. Lukefahr's exceptional circumstances request stated: "The papers [provided in support of the exceptional circumstances request] did not state why a static stander that you could transfer into and out of would not meet your medical needs." A.R. 59; App. F. The denial letter further stated "it was found you may have a medical need for a power wheelchair without a standing feature and a static standing system to meet both your medical and mobility needs. . . The papers sent failed to support medical necessity for the standing feature . . . or that the standing feature would serve a specific medical purpose for you." *Id*. Ms. Lukefahr's failure to try or rule out the use of a static stander in accordance with

---

[10] Although the district court judge stated that these findings did not comport with the notice Ms. Lukefahr received in the denial letter, Ms. Lukefahr knew that she was required to show that covered DME, like a static stander, would not meet her medical needs because she utilized the criteria for exceptional circumstances review in submitting materials to TMHP. *See, e.g.,* A.R. 122, 176. Also, the denial letter clearly stated that the information provided showed that a static stander would meet her medical needs. A.R. 59, App. F.

exceptional circumstances review policy was a primary reason for denial of the exceptional circumstances request. A.R. 428-29; App. E (exceptional circumstances review policy).

Both Ms. Clayes and Ms. Cannizarro testified that an integrated stander was not necessary to treat Ms. Lukefahr's medical conditions because a static stander would meet her medical need to stand. H.R. 1:28, 2:09. Additionally, Ms. Lukefahr was never considered or evaluated for a static stander, and Ms. Clayes and Ms. Cannizarro testified that the information Ms. Lukefahr's DME provider submitted in support of her exceptional circumstances request did not show that a static stander would not meet her medical need to stand, or that her individual circumstances required Texas Medicaid to provide her with an integrated stander in order to meet her medical needs. *Id*.; 1 Tex. Admin. Code § 354.1039(a)(4)(D), App. D; A.R. 428, App. E (HHSC's exceptional circumstances policy requires that the exceptional circumstances request identify the client's specific medical needs that can only be met by the requested equipment, and must show why alternative DME has been ruled out). Thus, as the hearing officer based his findings on testimony and evidence presented at the fair hearing, substantial evidence in the record supports HHSC's decision. *Benge*, 942 S.W.2d at 744 (The Court must uphold the agency's decision "on any legal basis shown in the record."); *Tex. Rivers Prot. Ass'n*, 910 S.W.2d at 155.

21

Despite some evidence in the record that access to constant standing with an integrated stander would be convenient for Ms. Lukefahr, there is "more than a mere scintilla" of evidence in the record to support HHSC's order affirming the denial of the integrated stander, which is sufficient to affirm the order on substantial evidence review. *State v. Pub. Util. Comm'n*, 883 S.W.2d at 204 (Substantial evidence is more than a mere scintilla; the evidence may actually preponderate against the agency decision, and yet still amount to substantial evidence supporting the result reached by the agency.). Therefore, this Court should reverse the district court's final judgment and affirm HHSC's decision in this case.

**B.    Additionally, durable medical equipment that is covered by Texas Medicaid meets Ms. Lukefahr's other medical needs as expressed in the exceptional circumstances request.**

Substantial evidence in the record also showed that covered DME would meet Ms. Lukefahr's other medical needs. A.R. 59; App. F. The denial letter stated: "it was found you may have a medical need for a power wheelchair without a standing feature and a static standing system to meet both your medical and mobility needs. This equipment may be considered for you through Texas Medicaid if requested." A.R. 59; App. F. The hearing officer also found that it is undisputed "that Appellant met medical necessity criteria for a power wheelchair and a static stander or that these items met DME criteria." A.R. 589 (Finding of

22

Fact no 12); App. B. The record as a whole supports this conclusion. As substantial evidence showed that covered DME would meet Ms. Lukefahr's medical needs, HHSC's order should have been affirmed. 1 Tex. Admin. Code § 354.1039(a)(4)(D); App. D.

> **i. Substantial evidence in the record showed that covered durable medical equipment would meet Ms. Lukefahr's medical need to change positions frequently.**

Although Ms. Lukefahr's physician stated that a static stander would not allow Ms. Lukefahr to stand any time she needs to adjust her posture due to pain or to relieve other secondary effects of her medical conditions, substantial evidence in the record showed that she could meet these medical needs through the use of covered DME, including the tilt and recline, seat elevation, and leg elevation functions of her custom power wheelchair. A.R. 145-46; 571 ("Finding of Fact 3: Appellant is currently operating a Permobil C300 wheelchair with a seat elevation system, tilt/recline, and elevated leg rests features provided to her six years earlier."); App. B.

Ms. Cannizzaro testified that Ms. Lukefahr may use these components of her custom power wheelchair to meet her need to frequently change position, and the information Ms. Lukefahr provided in support of her exceptional circumstances request also supports this conclusion. H.R. 2:02. One study submitted by Ms. Lukefahr in the exceptional circumstances request entitled "Load Redistribution in

23

Variable Position Wheelchairs in People With Spinal Cord Injury" concludes that the benefits of repositioning with an integrated stander can also be achieved through tilt and recline. *See* A.R. 155-61. Ms. Lukefahr's physical therapist also noted the benefits that can be achieved through tilt and recline, seat elevation, and elevating leg rests including, but not limited to, positioning for eating, self-care, reaching, and repositioning, facilitating bowel/bladder management, addressing circulatory issues and blood pressure, reducing edema, reducing respiratory distress, and facilitating independent transfer. A.R. 84. As such, if Ms. Lukefahr has an immediate need to change position, substantial evidence in the record shows that other, covered, DME will meet her medical needs. Therefore, substantial evidence in the record as a whole supports HHSC's decision affirming denial of the exceptional circumstances request. *Benge*, 942 S.W.2d at 744 (The Court must uphold the agency's decision "on any legal basis shown in the record."); *Stevens*, 868 S.W.2d at 777-78 (if reasonable minds could have reached the conclusion that HHSC reached on the record presented, then the Court must uphold HHSC's order).

ii. **Substantial evidence in the record showed that covered durable medical equipment would meet Ms. Lukefahr's needs in her activities of daily living.**

Ms. Lukefahr's physician also stated that an integrated stander would allow her more independence in her activities of daily living by allowing her to cook and

24

be more independent in the kitchen and in performing personal hygiene tasks. A.R. 82, 146. But the information submitted by Ms. Lukefahr's DME provider showed that Ms. Lukefahr may use a seat elevator to allow more independence in the kitchen and bathroom. A.R. 84. Further, the DME provider noted that recline "offers the most functional positions for eating, self care, reaching, and repositioning" and adjustable seat height offers "better positioning for reaching, which can lead to independence in many activities, such as eating, cooking, and hand washing." *Id*. And, due to the evidence in the exceptional circumstances request that Ms. Lukefahr has limited mobility in her arms and hands and limited muscle strength, at least some evidence showed that integrated standing would not allow her to be significantly more independent in her activities of daily living. A.R. 166-67. Given the evidence in the record that showed an integrated stander would not provide Ms. Lukefahr additional benefit in her activities of daily living as compared with covered DME, this Court should reverse the district court's final judgment and affirm HHSC's decision.[11]  *Benge*, 942 S.W.2d at 744 (The Court must uphold the agency's decision "on any legal basis shown in the record).

---

[11] Ms. Lukefahr's providers also expressed that an integrated stander would help her progress at work. A.R. 82, 145.  But Ms. Lukefahr's progress at work is unrelated to her medical needs and, as such, is not a basis for coverage under exceptional circumstances. *Moore*, 637 F.3d at 1244 *citing Beal*, 432 U.S. at 444 ("a participating state is not required to fund desirable but medically unnecessary services requested by a Medicaid recipient's physician"); *see also* H.R. 3:16 (Ms. Cannizzaro testified that Ms. Lukefahr's exceptional circumstances request did not show a medical need to stand at work).

25

**IV.    The District Court Erred in Reversing HHSC's Decision as Arbitrary and Capricious or in Violation of Due Process because the Hearing Officer and Reviewing Attorney Fulfilled their Duties and Provided Ms. Lukefahr with all Required Due Process.**

Additionally, the district court judgment reversed HHSC's decision as arbitrary and capricious and in violation of Ms. Lukefahr's due process rights. C.R. 226; App. A. The district court found that HHSC's order lacked any findings of fact to support the decision, and stated that the hearing officer and reviewing attorney failed to provide adequate due process in this case.[12] C.R. 222-25; App. G. But, as discussed in part III, HHSC's decision was supported by findings of fact. And the hearing officer and reviewing attorney fulfilled their statutory duties, providing all due process required. Thus, the district court erred in reversing the decision as arbitrary and capricious and in violation of due process.

**A.    The hearing officer provided all required due process, including making findings of fact supported by the record.**

The district court found that HHSC's decision was arbitrary and capricious because it was not supported by any findings of fact. C.R. 266; App. A. The district court noted that many of the hearing officer's findings of fact merely recite

---

[12] The district court again elevated due process required in a fair hearing, especially considering the informal nature thereof. 1 Tex. Admin. Code 357.5(c) ("The hearings officer conducts the fair hearing as an informal proceeding, not as a formal court hearing, and is not required to follow the Texas Rules of Evidence or the Texas Rules of Civil Procedure."). As is discussed in this section, the district court's concerns amount to disagreements with the wording of the fair hearing findings of fact and the administrative review order that do not amount to a denial of due process or render the decision arbitrary and capricious. *See* C.R. 223-24; App. E.

procedural history, and asserted that the findings of fact may not have been based on the hearing officer's consideration of the evidence. C.R. 223; App. G. But the hearing officer fulfilled his duties in the fair hearing, and the decision was not arbitrary and capricious.

The hearing officer presiding over a fair hearing has many responsibilities. 1 Tex. Admin Code § 357.5 ("Hearing Officer Responsibilities"). During the hearing, among other responsibilities, the hearing officer "ensures consideration of all relevant points at issue and facts pertinent to the appellant's situation at the time the action was taken," "requests, receives, and makes part of the record all relevant evidence," and "regulates the conduct and course of the fair hearing to ensure due process and an orderly hearing*." Id.* As relevant here, the hearing officer is responsible for the following after a fair hearing:

> (3) After the hearing, the hearings officer:

> (A) makes a decision based on the evidence presented at the hearing;

> (B) determines if the agency's or its designee's action is in compliance with statutes, policies, or procedures;

> (C) allows the appellant to request and receive a copy of the recording at no charge;

> (D) except as provided in subparagraph (E) of this paragraph, issues a timely written decision, and includes findings of fact, conclusions of law, pertinent statutes, and a final order; . . .

1 Tex. Admin. Code § 357.5(c)(3)(A)-(D).

The district court erred in finding that the hearing officer failed to make findings of fact. As discussed fully in part III, the hearing officer made findings of fact that were more than mere procedural recitations. A.R. 571-72. On substantial evidence review, a decision may be affirmed on the basis of any finding of fact, even if there are other irrelevant findings. *Tex. Rivers Prot. Ass'n*, 910 S.W.2d at 155 (As long as a properly supported finding given in the order supports an agency's action, a court will uphold the action despite the existence of other findings that are irrelevant or unsupported by the record.). Thus, the decision was not arbitrary and capricious for an absence of findings of fact, and the district Court erred in reversing on this basis.

And, although the district court asserted that the hearing officer failed to specifically state that the findings of fact represented the hearing officer's findings after considering the evidence, the hearing officer prefaced the findings of fact by stating: "The hearing officer has carefully considered the evidence contained in the hearing record and makes findings of fact and conclusions of law based on the weight of the evidence presented and according to the burdens of proof explained in 1 TAC 357.9." A.R. 570; App. B. As the hearing officer clearly stated that his findings of fact were based on a consideration of the evidence presented during the hearing, he also fulfilled his duty in this regard, and did not violate Ms. Lukefahr's due process rights. Therefore, the district court erred in reversing the fair hearing

28

decision as arbitrary and capricious and for due process violations. *Gulf States Utils. Co.*, 841 S.W.2d at 474 (an agency's order is not arbitrary and capricious if it is based on a consideration of all relevant factors).

**B.      The reviewing attorney provided all required due process.**

The district court also asserted that the reviewing attorney failed to fulfill his duty on administrative review by failing to review the fair hearing decision for errors of law and fact using a "preponderance of the evidence" standard. C.R. 223; App. G.  But, as the reviewing attorney also fulfilled his duties and provided Ms. Lukefahr with all due process, the district court erred in reversing HHSC's decision on this basis.

"Before an applicant for or recipient of public assistance benefits may appeal a decision of a hearing officer for the commission . . ., the applicant or recipient must request an administrative review by an appropriate attorney for [HHSC] . . .". Tex. Gov't Code § 531.019(c). The reviewing attorney has a statutory duty to complete "an administrative review of the decision and notify the applicant or recipient in writing of the results of that review." Tex. Gov't Code § 531.019(e)(2). "The assigned attorney reviews the hearing decision and the hearings record upon which it is based for errors of law and errors of fact using the 'preponderance of evidence' standard. This standard means that the evidence as a whole shows that

the fact sought to be proved is more probable than not." 1 Tex. Admin. Code § 357.703(b)(3).

The administrative review decision shows that the reviewing attorney fulfilled his duty by reviewing the fair hearing decision for errors of law and fact, providing Ms. Lukefahr with all required due process in the administrative review. The administrative review order states:

> Based on my review of the matter, I have determined that the Hearings Officer developed the record appropriately, and the record reflects that Appellant's denial of the Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system was in accordance with applicable law and policy. It is, therefore, **ORDERED** that the Hearing Officer's decision in this matter is **SUSTAINED**.

A.R. 591 (emphasis in original); App. C. Thus, the order itself references consideration of the record and the evaluation of the record in light of the applicable law. *Id.*

And, as the district court noted, the reviewing attorney also states: "[b]ased on a preponderance of the evidence presented, substantial evidence exists to support the agency's action, and the Hearings Officer's conclusions and decision; therefore, the Hearings Officer's Decision is Sustained." A.R. 590; App. C. Again, the reviewing attorney states that the fair hearing decision is supported by a preponderance of the evidence. *Id.* Despite the district court's assertion that the reviewing attorney conflated the preponderance of the evidence standard with

30

substantial evidence review, nothing in the Order supports the conclusion that the reviewing attorney's the reference to "substantial evidence" is tied to the meaning of that term on judicial review under the Administrative Procedure Act. C.R. 223 note 5; Tex. Gov't Code § 2001.174. Thus, as the reviewing attorney provided all required due process in Ms. Lukefahr's case, the decision should have been affirmed. Therefore, this Court should reverse the district court's judgment and affirm HHSC's order in all respects.

## PRAYER

HHSC asks this Court to reverse the district court's judgment because HHSC's order denying Ms. Lukefahr's request for a custom power wheelchair with an integrated stander is supported by substantial evidence and is not arbitrary and capricious or in violation of Ms. Lukefahr's due process rights.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DAVID A. TALBOT, JR.
Chief, Administrative Law Division

31

/s/ Kara Holsinger
KARA HOLSINGER
Assistant Attorney General
State Bar No. 24065444
Office of the Attorney General of Texas
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4203
Facsimile: (512) 320-0167
kara.holsinger@texasattorneygeneral.gov

*Attorneys for Appellant*

## CERTIFICATE OF COMPLIANCE

In compliance with Travis County Local Rule 10.5 and Texas Rule of Appellate Procedure 9.4(i)(3) and relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this document is 8,491 including the portions that would otherwise be exempted by TRAP Rule 9.4(i)(1).

*/s/ Kara Holsinger*
KARA HOLSINGER

32

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing Appellant's Brief was served via e-serve and e-mail on this the 11th day of September, 2015 to the following:

Maureen O'Connell
Texas Bar No.  00795949
Southern Disability Law Center
1307 Payne Avenue
Austin, Texas 78757
Phone:  512-458-5800
Fax:  512-458-5850
moconnell458@gmail.com

*Attorney for Appellee*

/s/ Kara Holsinger
KARA HOLSINGER
Assistant Attorney General

# APPENDICES

# INDEX OF APPENDICES

Final Judgment in *Jessica Lukefahr v. Texas Health and Human Services Commission*, Cause No. D-1-GN-14-002158 ................................................. Tab A

Fair Hearing Decision *In the Matter of Jessica Lukefahr* ............................... Tab B

Administrative Review of Fair Hearing Decision *In the Matter of Jessica* .... Tab C
*Lukefahr*

1 Tex. Admin. Code § 354.1039 .................................................................... Tab D

2013 Medicaid Program Policy Manual Exceptional Circumstances Policy .. Tab E

Texas Medicaid & Healthcare Partnership Letter to Jessica Lukefahr
Denying Exceptional Circumstances Request .................................................. Tab F

 Letter from 345th District Court of April 28, 2015 ........................................ Tab G

*DeSario* Letter ............................................................................................ Tab H

*Detgen v. Janek*, 752 F.3d 627, 632 (5th Cir. 2014) ....................................... Tab I

# TAB A

Filed in The District Court
Travis County, Texas

**MAY 0 4 2015**

~~ 8:25 ~~ A M.
L. Price, District Clerk

No. D-1-GN-14-002158

| | | |
|---|---|---|
| JESSICA LUKEFAHR,<br>    Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| vs. | §<br>§ | OF TRAVIS COUNTY, TEXAS |
| TEXAS HEALTH AND HUMAN<br>SERVICES COMMISSION,<br>    Defendant. | §<br>§<br>§<br>§ | 345th JUDICIAL DISTRICT |

## **FINAL JUDGMENT**

Before the Court is Plaintiff's Petition for Judicial Review of a final administrative decision

issued by the Texas Health and Human Services Commission (HHSC). This action was filed

pursuant to TEX. GOV'T CODE § 531.019 to challenge HHSC's Medicaid fair hearing decision

denying Plaintiff a custom power wheelchair with integrated standing feature.

On April 14, 2015, the Court heard oral argument on the merits of Plaintiff's appeal.

Having considered the administrative record, the briefing, the arguments of counsel, and applicable

law, the Court finds that THHSC violated the due process rights of Ms. Lukefahr ~~Plaintiff's appeal to be meritorious as Defendant's administrative decision~~ and the decision

denying Plaintiff a custom power wheelchair with integrated standing feature is not supported by

substantial evidence. and is arbitrary and capricious. (S.Y.)

Accordingly, HHSC's decision is **REVERSED** and the case is remanded to HHSC for

further proceedings consistent with this judgment. This judgment disposes of all claims and all

parties, and is final and appealable.

IT IS SO ORDERED this _4th_ day of May, 2015.

_____
Judge Stephen Yelenosky

Case # D-1-GN-14-002158



004011043



226

# TAB B



# TEXAS HEALTH AND HUMAN SERVICES COMMISSION

May 13, 2014

KYLE L. JANEK, M.D.
EXECUTIVE COMMISSIONER

Jessica Lukefahr



Re:  Durable Medical Equipment (DME) Fair Hearing Appeal No. 1655424

Dear Ms. Lukefahr:

The information presented regarding the appeal has been carefully considered, and I have found that the agency's action was correct. See the attached final order for complete information about my decision.

If you are dissatisfied with the hearing decision, you may request an administrative review. Your request must be submitted in writing to the following address within 30 days from the date of this letter.

Hearings Administrator
Mail Code W-613
P.O. Box 149030
Austin, TX 78714

The nearest legal services office to you is:
Texas RioGrande Legal Aid – Corpus Christi Office
3825 Agnes Street
Corpus Christi, Texas 78405
Tel: (800) 840-3379

To obtain information in Spanish, please contact Stephanie Pace at (713) 696-3618.

Sincerely,

Javier Contreras, Hearings Officer
Health and Human Services Commission

cc:  Tanya Elliot, 4900 N. Lamar, MC 1070, Austin, TX 78751
Maureen O'Connell, Southern Disability Law Center, 1307 Payne Ave. Austin, TX 78757
TMHP
File

P. O. Box 13247 Austin, Texas 78711 - 4900 North Lamar, Austin, Texas 78751 Ph: (512) 424-6500

000563

Page 1

| | | |
|---|---|---|
| IN THE MATTER | § | ORDER OF THE |
| OF | § | TEXAS HEALTH AND HUMAN |
| JESSICA LUKEFAHR | § | SERVICES COMMISSION |
| | § | |
| | § | |

## ORDER

The undersigned designee of the Executive Commissioner, having received and considered the evidence submitted in this matter, is of the opinion that the preponderance of the evidence establishes that the agency's action **IS** in accordance with applicable law and policy. Therefore, that action is **SUSTAINED.**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE ATTACHED.

Signed on this _13th_ day of __May__, 2014

Javier Contreras, Hearings Officer
Health and Human Services Commission

000564

**Before the**
**Texas Health and Human Services Commission**
**Appeals Division**

| | § | |
|---|---|---|
| **IN THE MATTER** | § | **FAIR HEARING** |
| **OF** | § | **DECISION** |
| **JESSICA LUKEFAHR** | § | |

## I. INTRODUCTION

**Appellant: Jessica Lukefahr**

A hearing was convened via telephone on March 27, 2014 and reconvened on March 31, 2014. The hearing record was closed March 31, 2014.

**Appearances:**

| | |
|---|---|
| Jessica Lukefahr, | Appellant |
| Maureen O'Connell, | Attorney at Law with Southern Disability Law Center |
| David Russell, | Russell Medical representative and Appellant's witness |
| Michelle Hays, | Physical Therapist and Appellant's witness |
| Patricia Cannizzaro, Rn | Texas Medicaid &Healthcare Partnership (TMHP) representative |
| Donna Claeys, | Health & Human Services Commission policy representative |
| Tanya Elliott, | Legal counsel for TMHP |

**Purpose of Fair Hearing**

The purpose of the fair hearing was to determine whether the action taken by TMHP to deny Appellant's request for a power wheelchair with an integrated standing feature was in accordance with applicable law and policies.

**Legal Authority**

The fair hearing was conducted under the authority provided by Title 1, Section 357.1 through 357.25 of the Texas Administrative Code (TAC) and related law.

## II. PROCEDURAL HISTORY

1. On September 12, 2013, TMHP notified Appellant of the denial of a Permobil C500 VS power wheelchair with an integrated standing feature because it was not medically necessary after consideration for exceptional circumstances.

2. Appellant disagreed with the agency's decision and requested an appeal December 3, 2013.

000565

3. A notice of the fair hearing was mailed to Appellant December 10, 2013, by first class mail for a teleconference hearing scheduled for January 29, 2014.

4. A reschedule of the January 29th hearing was requested by the agency due to a scheduling conflict.

5. On or about January 15, 2014, the hearing was reassigned to this hearing officer.

6. On January 22, 2014, a notice of fair hearing was mailed to Appellant and her legal representative, by first class mail for the hearing scheduled for February 27, 2014.

7. A hearing was convened February 27, 2014.

8. A notice of fair hearing was mailed to Appellant and her legal representative on March 4, 2014, by first class mail for the reconvened hearing scheduled for March 31, 2014.

9. The hearing reconvened March 31, 2014.


# III. RELEVANT AUTHORITIES

**Texas Medicaid Providers Procedures Manual Vol. 2 - December 2013:**

Policy section 2.2.2 states Texas Medicaid defines Durable Medical Equipment (DME) as:

Medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness.

Since there is no single authority, such as a federal agency, that confers the official status of "DME" on any device or product, HHSC retains the right to make such determinations with regard to DME benefits of Texas Medicaid. DME benefits of Texas Medicaid must have either a well-established history of efficacy or, in the case of novel or unique equipment, valid, peer-reviewed evidence that the equipment corrects or ameliorates a covered medical condition or functional disability.

Requested DME may be a benefit when it meets the Medicaid definition of DME. The majority of DME and expendable supplies are covered home health services. If a service cannot be provided for a client who is 20 years of age or younger through home health services, these services may be covered through Comprehensive Care Program (CCP) if they are determined to be medically necessary.

000566

Policy section 2.2.15.6 titled Wheeled Mobility Systems notes that a wheeled mobility system is a manual or power wheelchair, or scooter that is a customized power or manual mobility device, or a feature or component of the mobility device, including but not limited to, the following:

- Seated positioning components

- Powered or manual seating options

- Specialty driving controls for powered chairs

- Adjustable frame

- Other complex or specialized components

A wheeled mobility system includes all of the following:

- Tilt-in-space (manual) wheelchairs

- Pediatric size (manual) wheelchairs and strollers

- Custom ultra-lightweight (manual) wheelchairs

- All power wheelchairs
- All scooters


Policy section 2.2.15.15 titled Power Seat Elevation System states that a power seat elevation system is used to raise and lower the client in their seated position without changing the seat angles to provide varying amounts of added vertical access. The use of a power seat elevation system will:

- Facilitate independent transfers, particularly uphill transfers, to and from the wheelchair, and
- Augment the client's reach to facilitate independent performance of Mobility-Related Activities of Daily Living (MRADLs) in the home.

Policy section 2.2.15.15.1 titled Prior Authorization indicates a power seat elevation system may be prior authorized to promote independence in a client who meets all of the following criteria:

• The client does not have the ability to stand or pivot transfer independently.
• The client requires assistance only with transfers across unequal seat heights, and as a result of having the power seat elevation system, the client will be able to transfer across unequal seat heights unassisted.
•The client has limited reach and range of motion in the shoulder or hand that prohibits independent performance of MRADLs (such as, dressing, feeding, grooming, hygiene, meal preparation, and toileting).

000567

Policy section 2.2.15.15.2 titled Documentation Requirements indicates that the submitted documentation must include an assessment completed, signed, and dated by a physician or a licensed occupational or physical therapist that includes the following:

- A description of the client's current level of function without the device
- Documentation that identifies how the power seat elevation system will improve the client's function
- A list of MRADLs the client will be able to perform with the power seat elevation system that the client is unable to perform without the power seat elevation system and how the device will increase independence
- The duration of time the client is alone during the day without assistance
- The client's goals for use of the power seat elevation system

Note: A power seat elevation system option will not be authorized for the convenience of a caregiver, or if the device will not allow the client to become independent with MRADLs and transfers.

Policy section 2.2.15.26 titled Procedure Codes and Limitations for Mobility Aids indicates: The following mobility aids are not a benefit of Home Health Services:

- Feeder seats, floor sitters, corner chairs, and travel chairs are not considered medically necessary devices

- Items including but not limited to tire pumps, a color for a wheelchair, gloves, back packs, and flags are not considered medically necessary

- Mobile standers, power standing system on a wheeled mobility device

- Vehicle lifts and modifications

- Permanent ramps, vehicle ramps, and home modifications

- Stairwell lifts of any type

- Elevators or platform lifts of any type

- Patient lifts requiring attachment to walls, ceilings, or floors

- Chairs with incorporated seat lifts

- An attendant control, for safety, all power chairs are to include a stop switch

- Powered mobility device for use only outside the home

000568

Texas Medicaid does not reimburse separately for associated DME charges, including battery disposal fees or state taxes. Reimbursement for associated charges is included in the reimbursement for the specific piece of equipment. White canes for the blind are considered self help adaptive aids and are not a benefit of Home Health Services.

Note: Texas Health Steps (THSteps)-eligible clients who have a medical need for services beyond the limits of this Home Health Services benefit may be considered under CCP.

**Medicaid Program Policy Manual December 2013:**

Medicaid Exceptional Circumstances (DME)

Policy Overview

1 The Texas Health and Human Services Commission (HHSC) provides for an Exceptional Circumstances provision for durable medical equipment (DME) that is not covered under Texas Medicaid.

2 TAC rule §354.1039 (a)(4)(D) provides the regulatory authority for this provision. It states that Medical equipment may "... in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis."

3 Providers may invoke the Exceptional Circumstances provision upon written notice to TMHP, provided the written notice meets all of the following conditions. The notice must include:

3.1 A completed Home Health Services (Title XIX) DME/Medical Supplies Physician Order Form signed and dated by the prescribing physician;
3.2 The client's diagnosis;
3.3 A clear, concise description of the DME requested;
3.4 Identification of the client's specific medical needs that can only be met by the requested equipment;
3.5 Letters of Medical Necessity (LOMN) from the client's clinical professionals documenting alternative measures and alternative DME that have been tried and that have failed to meet the client's medical need(s), or have been ruled out, and an explanation of why it failed or was ruled out;
3.6 A minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective.

NOTE: Marketing materials, brochures, or claims made by the equipment manufacturer do not satisfy this requirement. The articles provided must support the

000569

information contained within the LOMN that indicates why the covered DME cannot meet the client's specific medical need(s), and

3.7 Submission of either the manufacturer's suggested retail pricing (MSRP) for the DME requested or an invoice documenting the provider's cost.

4 Upon review, TMHP may request additional supporting documentation.

5 Although the TMHP Prior Authorization Department processes the requests for Exceptional Circumstances, reviews the information submitted by the requesting provider, and makes an initial recommendation to the HHSC Office of the Medical Director (OMD), OMD has full responsibility to determine whether a client's condition meets the clinical criteria to qualify for the Exceptional Circumstances provision.

6 The Exceptional Circumstances provision is not an available process to pursue for those clients who receive prior authorization denials for medical necessity or for technical reasons (i.e., incomplete documentation, exceeding policy limitations). Clients that have been denied prior authorization under these circumstances may appeal that decision through the regular fair hearing process.

7 Enrollment criteria do not apply to this policy.

8 The Exceptional Circumstances provision is only for durable medical equipment. Items listed as non-covered services in the medical policy apply.

NOTE: Even if equipment is not referenced in medical policy as a non-covered service, the provider may still invoke the Exceptional Circumstances provision.

9 Given that only DME that is not a benefit of Texas Medicaid fall within this policy, DME authorized under the Exceptional Circumstances provision must be requested under the appropriate miscellaneous code and must be authorized by TMHP in order for the provider to receive payment.

10 Adjudication guidelines do not apply to this policy, nor do any specific edits and audits exist for this provision.

## IV. SUMMARY OF EVIDENCE

The hearing officer has carefully considered the evidence contained in the hearing record and makes findings of fact and conclusions of law based on the weight of the evidence presented and in accordance with the burdens of proof explained in 1 TAC 357.9.

000570

# V. FINDINGS OF FACT

**Finding of Fact No. 1**: Appellant is a twenty six year old female diagnosed with spastic quadriplegia, dystonia, and cerebral palsy. Appellant resides alone and requires assistance with all her activities of daily living from a personal caregiver.

**Finding of Fact No. 2**: On or about March 14, 2013, TMHP received a request from Russell Medical for prior authorization of a Permobil C500 VS power wheelchair with an integrated standing feature and seat elevation system.

**Finding of Fact No. 3**: Appellant is currently operating a Permobil C300 wheelchair with a seat elevation system, tilt/recline, and elevated leg rests features provided to her six years earlier.

**Finding of Fact No. 4**: On March 21, 2013, TMHP notified Appellant and her provider of the denial of a Permobil C500 VS power wheelchair with integrated standing feature because Texas Medicaid does not cover mobile standers and the wheelchair model requested does not come without a power standing feature.

**Finding of Fact No. 5**: Appellant does not currently have a static stander for use at her home and was not evaluated for prior authorization of one.

**Finding of Fact No. 6**: Appellant was able to operate a Permobil C500 power wheelchair and all its integrated features, including the standing feature during her wheelchair evaluation.

**Finding of Fact No. 7**: On or about June 3, 2013, Appellant requested an exceptional circumstances review of the denial of the Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system from TMHP.

**Finding of Fact No. 8**: On June 27, 2013, Appellant's provider (Russell Medical) submitted clinical information to TMHP for consideration of exceptional circumstances for DME not covered under Texas Medicaid.

**Finding of Fact No. 9**: The HHSC Office of the Medical Director (OMD) reviewed Appellant's clinical information and determined that the client's condition did not meet the clinical criteria for the Exceptional Circumstances provision for a Permobil C500 VS power wheelchair with integrated standing feature. OMD concluded that the medical information failed to substantiate that the power standing feature and its associated components served a specific medical purpose for Appellant.

**Finding of Fact No. 10**: On September 12, 2013, TMHP notified Appellant and her provider of the denial of exceptional circumstances for a Permobil C500 power wheelchair with integrated standing feature because medical information submitted did not support that the power standing feature and its associated components served a specific medical purpose to meet exceptional medical circumstances for the Appellant.

000571

**Finding of Fact No. 11:** The standing feature cannot be separated from the power wheelchair model requested (Permobil C500 VS).

**Finding of Fact No. 12:** TMHP did not dispute that Appellant met medical necessity criteria for a power wheelchair and static stander or that these items met DME criteria.

## VI. CONCLUSIONS OF LAW

Based on the findings of fact and applicable authority, the hearing officer concludes that:

Because mobile standers, power standing systems on a wheeled mobility device are not a benefit of Home Health Services and exceptional circumstances for DME were not met, the decision by TMHP on September 12, 2013 to deny Appellant a Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system **WAS** in accordance with applicable law and policy; therefore the agency's action is **SUSTAINED**.

## VII. EXHIBITS

**Exhibit 1 admitted on behalf of TMHP:**

Page 1-2: Evidence cover letter dated December 11, 2013.

Page 3-7: Notice of Hearing dated December 10, 2013 and Summary of Fair Hearing request.

Page 8-14: Notice of Exceptional Circumstance denial from TMHP to Appellant dated September 12, 2013.

Page 15-17: Notice of Exceptional Circumstance denial from TMHP to Russell Medical dated September 12, 2013.

Page 18-20: Pending notice dated July 2, 2013 from TMHP to Russell Medical.

Page 21-65: Clinical information submitted to TMHP on June 27, 2013.

Page 66-68: Pending notice dated July 2, 2013 from TMHP to Russell Medical.

Page 69: Fax transmission report dated June 18, 2013 to Russell Medical.

Page 70-122: DME Prior Authorization request and clinical information submitted by Russell Medical to TMHP on June 13, 2013.

Page 123-191: Request for Exceptional Circumstances review and clinical information submitted by Russell Medical to TMHP on June 3, 2013.

Page 192-258: DME Prior Authorization request and clinical information submitted by Russell Medical to TMHP on April 19, 2013.

Page 259-311: DME Prior Authorization request and clinical information submitted by Russell Medical to TMHP on March 25, 2013.

Page 312-316: Request for reconsideration of DME power wheelchair denial submitted to TMHP on March 25, 2013.

Page 317-325: Notice of DME denial to Appellant and Russell Medical from TMHP dated March 21, 2013.

Page 326-349: DME Prior Authorization request and clinical information submitted by Russell Medical to TMHP on March 18, 2013.

000572

Page 350-356: Texas Medicaid Providers Procedures Manual Vol. 2 – November 2013.
Page 357-359: Code of Federal Regulations title 42, volume 4, sections 440.70 and 441.15.
Page 360-368: Texas Administrative Codes.


**Exhibit 1A admitted on behalf of TMHP:**

Page 1-2: Evidence cover letter dated December 23, 2013.
Page 3: Notice of Hearing dated December 10, 2013.
Page 4-9: Exceptional Circumstances review decision documentation and physicians notes.
Page 10-13: Exceptional Circumstances (DME) Policy Overview.
Page 14-39: Texas Medicaid Providers Procedures Manual Vol. 2 – December 2013.
Page 40-42: Texas Administrative Code (Requirements for Wheeled Mobility Systems).
Page 43: Blank page.


**Exhibit 1B admitted on behalf of TMHP:**

Page 1-2: Evidence cover letter dated February 24, 2014.
Page 3: Notice of Hearing dated January 22, 2014.
Page 4-7: Texas Medicaid Providers Procedures Manual Vol. 2 – March 2013 (DME).


**Exhibit 2 admitted on behalf of TMHP:**

Page 1-10: BlueCross BlueShield of Texas DME Medical Policies.


**Exhibit 3 admitted on behalf of Appellant:**

Page JL1-JL2: Exceptional Circumstances review decision and physicians notes.
Page JL3-JL5: Letter from Southern Disability Law Center to HHSC Office of General Counsel dated September 3, 2013.
Page JL6-JL8: Letter from HHSC Office of General Counsel to Southern Disability Law Center dated September 12, 2013.
Page JL9-JL12: Exceptional Circumstances DME determination documentation and physicians notes.
Page JL13-JL14: Letter from Southern Disability Law Center to HHSC Office of General Counsel dated September 20, 2013.
Page JL15-JL23: Petitioner's Interrogatories.
Page JL24-JL25: Letter from Southern Disability Law Center to TMHP dated November 19, 2013.
Page JL26-JL27: Letter from Southern Disability Law Center to HHSC Office of General Counsel dated December 23, 2013.
Page JL28: Letter from Southern Disability Law Center to HHSC Office of General Counsel dated January 9, 2014.

Page JL29-JL30: Letter from HHSC Office of General Counsel to the hearing officer dated January 10, 2014.

Page JL31-JL32: Letter from Southern Disability Law Center to the hearing officer dated January 10, 2014.

Page JL33-JL34: Center for Medicare & Medicaid Services policy clarification regarding DME dated May 21, 2013.

Page JL35: Center for Medicaid and State Operations letter dated September 4, 1998 (DeSario vs Thomas).

Page JL36-JL39: Exceptional Circumstances (DME) Policy Overview.

Page JL40-JL42: Texas Administrative Codes0

Page HL43-JL49: Texas Medicaid Providers Procedures Manual Vol. 2 – January 2014.

Page JL50-JL53: Texas Administrative Code (Requirements for Wheeled Mobility Systems)

Page JL54-JL59: TAC Home Health Services Benefits and Limitations.

Page JL60-JL61: DME, medical supplies, and nutritional products handbook policy 2.2.15.26.

Page JL62-JL80: Petitioner's Memorandum in support of appeal 1655424.

Signed on this _13th_ day of _May_, 2014

Javier Contreras, Hearings Officer
Health and Human Services Commission

000574

# TAB C



TEXAS HEALTH AND HUMAN SERVICES COMMISSION

KYLE L. JANEK, M.D.
EXECUTIVE COMMISSIONER

June 17, 2014

Ms. Jessica Lukefahr

███████████████████

███████████████████

> Re:    Administrative Review for Durable Medical Equipment (DME)
>        Appeal No. 1655424; Case No. ████████

Dear Ms. Lukefahr:

Your request for an administrative review of the hearing decision issued on May 13, 2014, has been received and I have reviewed the facts, rules, and regulations. I have determined that the Hearings Officer developed the record appropriately and that the record reflects that all policies and procedures were properly applied; therefore, I am upholding the Hearings Officer's decision and enclosing the agency's final decision.

If you still disagree with this decision, you may file for judicial review of the decision in the District Courts of Travis County within 30 days of the date of this letter.

Sincerely,

Robert C. Prewitt
HHSC Regional Legal Services Attorney

Enclosure: Final Decision

P. O. Box 13247   •   Austin, Texas 78711   •   4900 North Lamar, Austin, Texas   78751   •   (512) 424-6500

000580

Cc:    Kara Oslick, HHSC Hearings Administrator    MC Y-613

        Tanya Elliott, Assistant General Counsel    MC 1070

Ms. Maureen O'Connell
Southern Disability Law Center
1307 Payne Avenue
Austin, Texas 78757

000581

# TEXAS HEALTH AND HUMAN SERVICES COMMISSION
## FAIR HEARING
## ADMINISTRATIVE REVIEW

| | | |
|---|---|---|
| IN THE MATTER | § § § | APPEAL NO. 1655424 |
| OF | § § | |
| JESSICA LUKEFAHR | § § § | CASE NO. ▓▓▓▓▓▓ |

## ADMINISTRATIVE REVIEW OF FAIR HEARING DECISION

This administrative review is conducted pursuant to the authority of 1 Texas Administrative Code §357.1 through §357.25 and 1 Texas Administrative Code §357.701 through §357.703, and pursuant to Appellant's timely written request for an administrative review received on May 20, 2014.

## PURPOSE OF THE ADMINISTRATIVE REVIEW

The purpose of this administrative review is to determine whether or not the Hearings Officer followed the applicable laws, procedures, and program rules in the above-referenced and numbered fair hearing decision rendered on May 13, 2014.

## PROCEDURAL HISTORY

1. On September 12, 2013, Texas Medicaid and Healthcare Partnership (TMHP) notified Appellant of the denial of a Permobil C500 VS power wheelchair with an integrated standing feature, because it was not medically necessary after consideration for exceptional circumstances.

2. On December 3, 2013, Appellant requested an appeal.

3. A Notice of Hearing was mailed to Appellant on December 10, 2013, by first class mail, for a hearing on January 29, 2014.

4. A reschedule of the January 29, 2014, hearing was requested by the agency due to a scheduling conflict.

5. On or about January 15, 2014, the hearing was reassigned to Hearings Officer Javier Contreras.

000582

6. On January 22, 2014, a Notice of Fair Hearing was mailed to Appellant and her legal representative, by first class mail, for the hearing scheduled for February 27, 2014.

7. A hearing was convened February 27, 2014.

8. A Notice of Fair Hearing was mailed to Appellant and her legal representative on March 4, 2014, by first class mail for the reconvened hearing scheduled for March 31, 2014.

9. The hearing reconvened March 31, 2014.

10. On May 13, 2014, the Hearings Officer issued his decision, finding that the action taken by TMHP to deny the Permobil C500 VS power wheelchair with an integrated standing feature was in accordance with agency policy.

11. Appellant requested an Administrative Review on May 20, 2014.

12. The Administrative Review was assigned to this attorney on May 23, 2014.


## RELEVANT AUTHORITIES


### POLICY AND PROCEDURE


**Texas Medicaid Providers Procedures Manual Vol. 2 - December 2013:**

Policy Section 2.2.2 states Texas Medicaid defines Durable Medical Equipment (DME) as:

Medical equipment or appliances that are manufactured to withstand repeated use, ordered by a physician for use in the home, and required to correct or ameliorate a client's disability, condition, or illness.

Since there is no single authority, such as a federal agency, that confers the official status of "DME" on any device or product, HHSC retains the right to make such determinations with regard to DME benefits of Texas Medicaid. DME benefits of Texas Medicaid must have either a well-established history of efficacy or, in the case of novel or unique equipment, valid, peer-reviewed evidence that the equipment corrects or ameliorates a covered medical condition or functional disability.

Requested DME may be a benefit when it meets the Medicaid definition of DME. The majority of DME and expendable supplies are covered home health services. If a service cannot be provided for a client who is 20 years of age or younger through home health services, these services may be covered through Comprehensive Care Program (CCP) if they are determined to be medically necessary.

000583

Policy Section 2.2.15.6 titled Wheeled Mobility Systems notes that a wheeled mobility system is a manual or power wheelchair, or scooter that is a customized power or manual mobility device, or a feature or component of the mobility device, including but not limited to, the following:

- Seated positioning components

- Powered or manual seating options

- Specialty driving controls for powered chairs

- Adjustable frame

- Other complex or specialized components

A wheeled mobility system includes all of the following:

- Tilt-in-space (manual) wheelchairs

- Pediatric size (manual) wheelchairs and strollers

- Custom ultra-lightweight (manual) wheelchairs

- All power wheelchairs

- All scooters

Policy section 2.2.15.15 titled Power Seat Elevation System states that a power seat elevation system is used to raise and lower the client in their seated position without changing the seat angles to provide varying amounts of added vertical access. The use of a power seat elevation system will:

- Facilitate independent transfers, particularly uphill transfers, to and from the wheelchair, and

- Augment the client's reach to facilitate independent performance of Mobility-Related Activities of Daily Living (MRADLs) in the home.

Policy Section 2.2.15.15.1 titled Prior Authorization indicates a power seat elevation system may be prior authorized to promote independence in a client who meets all of the following criteria:

- The client does not have the ability to stand or pivot transfer independently.

- The client requires assistance only with transfers across unequal seat heights, and as a result of having the power seat elevation system, the client will be able to transfer across unequal seat heights unassisted.

- The client has limited reach and range of motion in the shoulder or hand that prohibits independent performance of MRADLs (such as, dressing, feeding, grooming, hygiene, meal preparation, and toileting).

Policy Section 2.2.15.15.2 titled Documentation Requirements indicates that the submitted documentation must include an assessment completed, signed, and dated by a physician or a licensed occupational or physical therapist that includes the following:

- A description of the client's current level of function without the device

- Documentation that identifies how the power seat elevation system will improve the client's function

- A list of MRADLs the client will be able to perform with the power seat elevation system that the client is unable to perform without the power seat elevation system and how the device will increase independence

- The duration of time the client is alone during the day without assistance

- The client's goals for use of the power seat elevation system

Note: A power seat elevation system option will not be authorized for the convenience of a caregiver, or if the device will not allow the client to become independent with MRADLs and transfers.

Policy Section 2.2.15.26 titled Procedure Codes and Limitations for Mobility Aids indicates: The following mobility aids are not a benefit of Home Health Services:

- Feeder seats, floor sitters, corner chairs, and travel chairs are not considered medically necessary devices

- Items including but not limited to tire pumps, a color for a wheelchair, gloves, back packs, and flags are not considered medically necessary

- Mobile standers, power standing system on a wheeled mobility device

- Vehicle lifts and modifications

- Permanent ramps, vehicle ramps, and home modifications

- Stairwell lifts of any type

- Elevators or platform lifts of any type

- Patient lifts requiring attachment to walls, ceilings, or floors

- Chairs with incorporated seat lifts

- An attendant control, for safety, all power chairs are to include a stop switch

- Powered mobility device for use only outside the home

Texas Medicaid does not reimburse separately for associated DME charges, including battery disposal fees or state taxes. Reimbursement for associated charges is included in the reimbursement for the specific piece of equipment. White canes for the blind are considered self help adaptive aids and are not a benefit of Home Health Services.

Note: Texas Health Steps (THSteps)-eligible clients who have a medical need for services beyond the limits of this Home Health Services benefit may be considered under CCP.

**Medicaid Program Policy Manual December 2013:**

Medicaid Exceptional Circumstances (DME)

Policy Overview

1 The Texas Health and Human Services Commission (HHSC) provides for an Exceptional Circumstances provision for durable medical equipment (DME) that is not covered under Texas Medicaid.

2 TAC rule §354.1039 (a)(4)(D) provides the regulatory authority for this provision. It states that Medical equipment may "… in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis."

3   Providers may invoke the Exceptional Circumstances provision upon written notice to TMHP, provided the written notice meets all of the following conditions. The notice must include:

   3.1    A completed Home Health Services (Title XIX) DME/Medical Supplies Physician Order Form signed and dated by the prescribing physician;
   3.2    The client's diagnosis;
   3.3    A clear, concise description of the DME requested;
   3.4    Identification of the client's specific medical needs that can only be met by the requested equipment;
   3.5    Letters of Medical Necessity (LOMN) from the client's clinical professionals documenting alternative measures and alternative DME that have been tried and that have failed to meet the client's medical need(s), or have been ruled out, and an explanation of why it failed or was ruled out;
   3.6    A minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective.

NOTE:  Marketing materials, brochures, or claims made by the equipment manufacturer do not satisfy this requirement. The articles provided must support the information contained within the LOMN that indicates why the covered DME cannot meet the client's specific medical need(s), and

   3.7    Submission of either the manufacturer's suggested retail pricing (MSRP) for the DME requested or an invoice documenting the provider's cost.

4   Upon review, TMHP may request additional supporting documentation.

5   Although the TMHP Prior Authorization Department processes the requests for Exceptional Circumstances, reviews the information submitted by the requesting provider, and makes an initial recommendation to the HHSC Office of the Medical Director (OMD), OMD has full responsibility to determine whether a client's condition meets the clinical criteria to qualify for the Exceptional Circumstances provision.

6   The Exceptional Circumstances provision is not an available process to pursue for those clients who receive prior authorization denials for medical necessity or for technical reasons (i.e., incomplete documentation, exceeding policy limitations). Clients that have been denied prior authorization under these circumstances may appeal that decision through the regular fair hearing process.

7   Enrollment criteria do not apply to this policy.

8   The Exceptional Circumstances provision is only for durable medical equipment. Items listed as non-covered services in the medical policy apply.

000587

NOTE: Even if equipment is not referenced in medical policy as a non-covered service, the provider may still invoke the Exceptional Circumstances provision.

9  Given that only DME that is not a benefit of Texas Medicaid fall within this policy, DME authorized under the Exceptional Circumstances provision must be requested under the appropriate miscellaneous code and must be authorized by TMHP in order for the provider to receive payment.

10  Adjudication guidelines do not apply to this policy, nor do any specific edits and audits exist for this provision.

## FINDINGS OF FACT

**FINDING OF FACT NO. 1:**    Appellant is a twenty six year old female diagnosed with spastic quadriplegia, dystonia, and cerebral palsy. Appellant resides alone and requires assistance with all her activities of daily living from a personal caregiver.

**FINDING OF FACT NO. 2:**    On or about March 14, 2013, TMHP received a request from Russell Medical for prior authorization of a Permobil C500 VS power wheelchair with an integrated standing feature and seat elevation system.

**FINDING OF FACT NO. 3:**    Appellant is currently operating a Permobil C300 wheelchair with a seat elevation system, tilt/recline, and elevated leg rests features provided to her six years earlier.

**FINDING OF FACT NO. 4:**    On March 21, 2013, TMHP notified Appellant and her provider of the denial of a Permobil C500 VS power wheelchair with integrated standing feature because Texas Medicaid does not cover mobile standers and the wheelchair model requested does not come without a power standing feature.

**FINDING OF FACT NO. 5:**    Appellant does not currently have a static stander for use at her home and was not evaluated for prior authorization of one.

**FINDING OF FACT NO. 6:**    Appellant was able to operate a Permobil C500 power wheelchair and all its integrated features, including the standing feature, during her wheelchair evaluation.

**FINDING OF FACT NO. 7:** On or about June 3, 2013, Appellant requested an exceptional circumstances review of the denial of the Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system from TMHP.

**FINDING OF FACT NO. 8:** On June 27, 2013, Appellant's provider (Russell Medical) submitted clinical information to TMHP for consideration of exceptional circumstances for DME not covered under Texas Medicaid.

**FINDING OF FACT NO. 9:** The HHSC Office of the Medical Director (OMD) reviewed Appellant's clinical information and determined that Appellant's condition did not meet the clinical criteria for the Exceptional Circumstances provision for a Permobil C500 VS power wheelchair with integrated standing feature. OMD concluded that the medical information failed to substantiate that the power standing feature and its associated components served a specific medical purpose for Appellant.

**FINDING OF FACT NO. 10:** On September 12, 2013, TMHP notified Appellant and her provider of the denial of exceptional circumstances for a Permobil C500 power wheelchair with integrated standing feature because medical information submitted did not support that the power standing feature and its associated components served a specific medical purpose to meet exceptional medical circumstances for Appellant.

**FINDING OF FACT NO. 11:** The standing feature cannot be separated from the power wheelchair model requested, which is the Permobil C500 VS.

**FINDING OF FACT NO. 12:** TMHP did not dispute that Appellant met medical necessity criteria for a power wheelchair and static stander or that these items met DME criteria.

## CONCLUSIONS OF LAW

Based on the findings of fact and applicable authority, the Hearings Officer correctly concluded that:

**CONCLUSION OF LAW NO. 1:** Since mobile standers, power standing systems on a wheeled mobility device, are not a benefit of Home Health Services and exceptional circumstances for DME were not met, the decision by TMHP on September 12, 2013, to deny Appellant a Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system **WAS** in accordance with applicable law and policy; therefore, the agency's action is **SUSTAINED**.

Based on a preponderance of the evidence presented, substantial evidence exists to support the agency's action, and the Hearings Officer's conclusions and decision; therefore, the Hearings Officer's Decision is **Sustained**.

## ORDER

Based on my review of this matter, I have determined that the Hearings Officer developed the record appropriately, and the record reflects that Appellant's denial of the Permobil C500 VS power wheelchair with integrated standing feature and seat elevation system was in accordance with applicable law and policy. It is, therefore, **ORDERED** that the Hearings Officer's decision in this matter is **SUSTAINED.**

Signed on this the 17th day of June 2014.

Robert C. Prewitt
Reviewing Attorney
Texas Health and Human Services Commission

**ADOPTED:**

Javier Contreras
Hearings Officer
Texas Health & Human Services Commission

# TAB D

TEXAS ADMINISTRATIVE CODE

\*\*\* This document reflects all regulations in effect as of August 31, 2015 \*\*\*

TITLE 1. ADMINISTRATION
PART 15. TEXAS HEALTH AND HUMAN SERVICES COMMISSION
CHAPTER 354. MEDICAID HEALTH SERVICES
SUBCHAPTER A. PURCHASED HEALTH SERVICES
DIVISION 3. MEDICAID HOME HEALTH SERVICES

1 TAC § 354.1039  (2015)

§ 354.1039. Home Health Services Benefits and Limitations

(a) The State determines authorization requirements and limitations for covered home health service benefits. The home health agency is responsible for obtaining prior authorization where specified for the healthcare service, supply, equipment, or appliance. Home health service benefits include the following:

(1) Skilled nursing. Nursing services provided by a registered nurse (RN) who is currently licensed by the Board of Nurse Examiners for the State of Texas and/or a licensed vocational nurse (LVN) licensed by the Texas Board of Vocational Nurse Examiners provided on a part-time or intermittent basis and furnished through an enrolled home health agency are covered benefits. Billable nursing visits may also include:

(A) nursing visits required to teach the recipient, the primary caregiver, a family member and/or neighbor how to administer or assist in a service or activity which is necessary to the care and/or treatment of the recipient in a home setting;

(B) RN visits for skilled nursing observation, assessment, and evaluation, provided a physician specifically requests that a nurse visit the recipient for this purpose.

(i) The physician's request must reflect the need for the assessment visit.

(ii) Nursing visits for the primary purpose of assessing a recipient's care needs to develop a plan of care are considered administrative and are not billable; and

(C) RN visits for general supervision of nursing care provided by a home health aide and/or others over whom the RN is administratively or professionally responsible.

(2) Home health aide services. Home health aide services to provide personal care under the supervision of an RN, licensed physical therapist (PT), or occupational therapist (OT) employed by the home health agency are covered benefits.

(A) The primary purpose of a home health aide visit must be to provide personal care services.

(B) Duties of a home health aide include the performance of simple procedures such as personal care, ambulation, exercise, range of motion, safe transfer, positioning, and household services essential to health care at home, assistance with medications that are ordinarily self-administered, reporting changes in the patient's condition and needs, and completing appropriate records.

(C) Written instructions for home health aide services must be prepared by an RN or therapist as appropriate.

(D) The requirements for home health aide supervision are as follows.

(i) When only home health aide services are being furnished to a recipient, an RN must make a supervisory visit to the recipient's residence at least once every 60 days. These supervisory visits must occur when the aide is furnishing patient care.

(ii) When skilled nursing care, PT, or OT are also being furnished to a recipient, an RN must make a supervisory visit to the recipient's residence at least every two weeks.

(iii) When only PT or OT is furnished in addition to the home health aide services, the appropriate skilled therapist may make the supervisory visits in place of an RN.

(E) Visits made primarily for performing housekeeping services are not covered services.

(3) Medical supplies. Medical supplies are covered benefits if they meet the following criteria.

(A) Medical supplies must be:

(i) documented in the recipient's plan of care as medically necessary and used for medical or therapeutic purposes;

(ii) supplied through an enrolled home health agency in compliance with the recipient's plan of care; or

(iii) supplied by an enrolled medical supplier under written, signed, and dated physician's prescription; and

(iv) prior authorized unless otherwise specified by the department.

(B) Items which are not listed in subparagraph (C) of this paragraph may be medically necessary for the treatment or therapy of qualified recipients. If a prior authorization request is received for these items consideration will be given to the request. Approval for reasonable amounts of the requested items may be given if circumstances justify the exception and the need is documented.

(C) Covered items include, but are not limited to:

(i) colostomy and ileostomy care supplies;

(ii) urinary catheters, appliances and related supplies;

(iii) pressure pads including elbow and heel protectors;

(iv) incontinent supplies to include incontinent pads or diapers for clients over the age of four for medical necessity as determined by the physician;

(v) crutch and cane tips;

(vi) irrigation sets;

(vii) supports and abdominal binders (not to include braces, orthotics, or prosthetics);

(viii) medicine chest supplies not requiring a prescription (not to include vitamins or personal care items such as soap or shampoos);

(ix) syringes, needles, IV tubing and/or IV administration setups including IV solutions generally used for hydration or prescriptive additives;

(x) dressing supplies;

(xi) thermometers;

(xii) suction catheters;

(xiii) oxygen and related respiratory care supplies; or

(xiv) feeding related supplies.

(4) Durable medical equipment (DME). Durable Medical Equipment must meet the following requirements to qualify for reimbursement under Medicaid home health services.

(A) DME must:

(i) be medically necessary and the appropriateness of the health care service, supply, equipment, or appliance prescribed by the physician for the treatment of the individual recipient and delivered in his place of residence must be documented in the plan of care and/or the request form.

(ii) be prior authorized unless otherwise specified by the department;

(iii) meet the recipient's existing medical and treatment needs;

(iv) be considered safe for use in the home;

(v) be provided through an enrolled home health agency under a current physician's plan of care; or

(vi) be provided through an enrolled DME supplier under a written, signed and dated physician's prescription.

(B) The department will determine whether DME will be rented, purchased, or repaired based upon the duration and use needs of the recipient.

(i) Periodic rental payments are made only for the lesser of:

(I) the period of time the equipment is medically necessary; or

(II) when the total monthly rental payments equal the reasonable purchase cost for the equipment.

(ii) Purchase is justified when the estimated duration of need multiplied by the rental payments would exceed the reasonable purchase cost of the equipment or it is otherwise more practical to purchase the equipment.

(iii) Repair of durable medical equipment and appliances will be considered based on the age of the item and the cost to repair the item.

(I) A request for repair of durable medical equipment or appliances must include a statement or medical information from the attending physician substantiating that the medical appliance or equipment continues to serve a specific medical purpose and an itemized estimated cost list of the repairs. Rental equipment may be provided to replace purchased medical equipment or appliances for the period of time it will take to make necessary repairs to purchased medical equipment or appliances.

(II) Repairs will not be authorized in situations where the equipment has been abused or neglected by the patient, patient's family, or caregiver.

(III) Routine maintenance of rental equipment is the responsibility of the provider.

(C) Covered medical appliances and equipment (rental, purchase, or repairs) include, but are not limited to:

(i) manual or powered wheelchairs;

(I) non-customized including medically justified seating, supports and equipment; or

(II) customized, specifically tailored or individualized, powered wheelchairs including appropriate medically justified seating, supports and equipment not to exceed an amount specified by the department.

(ii) canes, crutches, walkers, and trapeze bars;

(iii) bed pans, urinals, bedside commode chairs, elevated commode seats, bath chairs/benches/seats;

(iv) electric and non-electric hospital beds and mattresses;

(v) air flotation or air pressure mattresses and cushions;

(vi) bed side rails and bed trays;

(vii) reasonable and appropriate appliances for measuring blood pressure and blood glucose suitable to the recipient's medical situation to include replacement parts and supplies;

(viii) lifts for assisting recipient to ambulate within residence;

(ix) pumps for feeding tubes and IV administration; and

(x) respiratory or oxygen related equipment.

(D) Medical equipment or appliances not listed in subparagraph (C) of this paragraph may, in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis.

(5) Physical therapy. To be payable as a home health benefit, physical therapy services must:

(A) be provided by a physical therapist who is currently licensed by the Texas Board of Physical Therapy Examiners, or physical therapist assistant who is licensed by the Texas Board of Physical Therapy Examiners who assists and is supervised by a licensed physical therapist;

(B) be for the treatment of an acute musculoskeletal or neuromuscular condition or an acute exacerbation of a chronic musculoskeletal or neuromuscular condition;

(C) be expected to improve the patient's condition in a reasonable and generally predictable period of time, based on the physician's assessment of the patient's restorative potential after any needed consultation with the therapist; and

(D) not be provided when the patient has reached the maximum level of improvement. Repetitive services designed to maintain function once the maximum level of improvement has been reached are not a benefit. Services related to activities for the general good and welfare of patients such as general exercises to promote overall fitness and flexibility and activities to provide diversion or general motivation are not reimbursable.

(6) Occupational therapy. To be payable as a home health benefit, occupational therapy services must be:

(A) provided by one who is currently registered and licensed by the Texas Board of Occupational Therapy Examiners or by an occupational therapist assistant who is licensed to assist in the practice of occupational therapy and is supervised by an occupational therapist;

(B) for the evaluation and function-oriented treatment of individuals whose ability to function in life roles is impaired by recent or current physical illness, injury or condition; and

(C) specific goal directed activities to achieve a functional level of mobility and communication and to prevent further dysfunction within a reasonable length of time based on the therapist's evaluation and physician's assessment and plan of care.

(7) Insulin syringes and needles. Insulin syringes and needles must meet the following requirements to qualify for reimbursement under Medicaid home health services.

(A) Pharmacies enrolled in the Medicaid Vendor Drug Program may dispense insulin syringes and needles to eligible Medicaid recipients with a physician's prescription.

(B) Prior authorization is not required for an eligible recipient to obtain insulin syringes and needles.

(C) Insulin syringes and needles obtained in accordance with this section will be reimbursed through the Medicaid Vendor Drug Program.

(D) A physician's plan of care is not required for an eligible recipient to obtain insulin syringes and needles under this section.

(8) Diabetic supplies and related testing equipment. Diabetic supplies and related testing equipment must meet the following requirements to qualify for reimbursement under Medicaid home health services.

(A) diabetic supplies and related testing equipment must be prescribed by a physician;

(B) prior authorization is required unless otherwise specified by the department; and

(b) Home health service limitations include the following.

(1) Patient supervision.

(A) Patients must be seen by their physician within 30 days prior to the start of home health services. This physician visit may be waived when a diagnosis has already been established by the attending physician and the patient is currently undergoing active medical care and treatment. Such a waiver is based on the physician's statement that an additional evaluation visit is not medically necessary.

(B) Patients receiving home health care services must remain under the care and supervision of a physician who reviews and revises the plan of care at least every 60 days or more frequently as the physician determines necessary.

(2) Time limited prior authorizations.

(A) Prior authorizations for payment of home health services may be issued by the department for a service period not to exceed 60 days on any given authorization. Specific authorizations may be limited to a time period less than the established maximum. When the need for home health services exceeds 60 days, or when there is a change in the service plan, the provider must obtain prior approval and retain the physician's signed and dated orders with the revised plan of care.

(B) The provider shall be notified by the department in writing of the authorization (or denial) of requested services.

(C) Prior authorization requests for covered Medicaid home health services must include the following information:

(i) The Medicaid identification form with the following information:

(I) full name, age, and address;

(II) Medical Assistance Program Identification number;

(III) health insurance claim number (where applicable);

(IV) Medicare number;

(ii) the physician's written, signed and dated plan of care (submitted by the provider if requested);

(iii) the clinical record data (completed and submitted by provider if requested);

(iv) a description of the home or living environment;

(v) a composition of the family/caregiver;

(vi) observations pertinent to the overall plan of care in the home; and

(vii) the type of service the patient is receiving from other community or state agencies.

(D) If inadequate or incomplete information is provided, the provider will be requested to furnish additional documentation as required to make a decision on the request.

(3) Medication administration. Nursing visits for the purpose of administering medications are not covered if:

(A) the medication is not considered medically necessary to the treatment of the individual's illness;

(B) the administration of medication exceeds the therapeutic frequency or duration by accepted standards of medical practice;

(C) there is not a medical reason prohibiting the administration of the medication by mouth; or

(D) the patient, a primary caregiver, a family member and/or neighbor has been taught or can be taught to administer intramuscular (IM) and intravenous (IV) injections.

(4) Prior approval. Services or supplies furnished without prior approval, unless otherwise specified by the department, are not benefits.

(5) Recipient residence. Services, equipment, or supplies furnished to a recipient who is a resident or patient in a hospital, skilled nursing facility, or intermediate care facility are not benefits.

(c) Home health services are subject to utilization review which includes the following:

(1) the physician is responsible for retaining in the client's record a copy of the plan of care and/or a copy of the request form documenting the medical necessity of the health care service, supply, equipment, or appliance and how it meets the recipient's health care needs; and

(2) the home health services provider is responsible for documenting the amount, duration, and scope of services in the recipient's plan of care, the equipment/supply order request, and the client record based on the physician's orders. This information is subject to retrospective review; and

(3) the State or its designated contractor may establish random and targeted utilization review processes to ensure the appropriate utilization of home health benefits and to monitor the cost effectiveness of home health services.

# TAB E



December 2013 Medicaid Program Policy Manual

# Exceptional Circumstances (DME)

**Medical Policy**

**Adjudication**

**Regulations**

## Policy Overview

1 The Texas Health and Human Services Commission (HHSC) provides for an Exceptional Circumstances provision for durable medical equipment (DME) that is not covered under Texas Medicaid.

2 TAC rule §354.1039 (a)(4)(D) provides the regulatory authority for this provision. It states that Medical equipment may "... in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis."

3 Providers may invoke the Exceptional Circumstances provision upon written notice to TMHP, provided the written notice meets all of the following conditions. The notice must include:

3.1 A completed Home Health Services (Title XIX) DME/Medical Supplies Physician Order Form signed and dated by the prescribing physician;

3.2 The client's diagnosis;

3.3 A clear, concise description of the DME requested;

3.4 Identification of the client's specific medical needs that can only be met by the requested equipment;

3.5 Letters of Medical Necessity (LOMN) from the client's clinical professionals documenting alternative measures and alternative DME that have been tried and that have failed to meet the client's medical need(s), or have been ruled out, and an explanation of why it failed or was ruled out;

3.6 A minimum of two articles from evidence-based medical peer-reviewed literature that demonstrate validated, uncontested data for use of the requested equipment to treat the client's specific medical condition, and that the requested equipment has been found to be safe and effective.

Note: Marketing materials, brochures, or claims made by the equipment manufacturer do not satisfy this requirement. The articles provided must support the information contained within the LOMN that indicates why the covered DME cannot meet the client's specific medical need(s), and

3.7 Submission of either the manufacturer's suggested retail pricing (MSRP) for the DME requested or an invoice documenting the provider's cost.

4 Upon review, TMHP may request additional supporting documentation.

5 Although the TMHP Prior Authorization Department processes the requests for Exceptional Circumstances, reviews the information submitted by the requesting provider, and makes an initial recommendation to the HHSC Office of the Medical Director (OMD), OMD has full responsibility to determine whether a client's condition meets the clinical criteria to qualify for the Exceptional Circumstances provision.

6 The Exceptional Circumstances provision is not an available process to pursue for those clients who receive prior authorization denials for medical necessity or for technical reasons (i.e., incomplete documentation, exceeding policy limitations). Clients that have been denied prior authorization under these circumstances may appeal that decision through the regular fair hearing process.

## Policy Profile

| Implementation Date | October 15, 2012 |
|---|---|
| Effective Date | October 15, 2012 |
| Reimbursement Methodology | Fee-for-Service |
| Claim Type | Not applicable |
| Claim Form | Not applicable |
| Provider Type | 17 - Home Health DME<br>40 - Medical Supplier (DME) |
| Provider Specialty | N/A |
| Program(s) | 100 (Fee-for-Service Medicaid) |
| Taxonomy Code(s) | Not applicable |

## Enrollment

7 Enrollment criteria do not apply to this policy.

## Medical Policy

8 The Exceptional Circumstances provision is only for durable medical equipment. Items listed as non-covered services in the medical policy apply.

Note: Even if equipment is not referenced in medical policy as a non-covered service, the provider may still invoke the Exceptional Circumstances provision. The following medical policies apply to this program policy:

000429

| |
|---|
| Augmentative Communication Device (ACD) System - Home Health |
| Bath and Bathroom Equipment - Home Health |
| Blood Pressure Devices - CCP |
| Breast Pumps |
| Diabetic Equipment and Supplies - CCP |
| Diabetic Equipment and Supplies - Home Health |
| Hearing Devices |
| Hospital Beds, Cribs, and Equipment - CCP |
| Hospital Beds and Equipment - Home Health |
| Implantable Infusion Pumps |
| Incontinence Supplies - Home Health |
| Intravenous (IV) Therapy Equipment and Supplies |
| Mobility Aids - CCP |
| Mobility Aids - Home Health |
| Neurostimulators |
| Nutritional (Enteral) Products, Supplies, and Equipment - Home Health |
| Osteogenic Stimulation |
| Penile and Testicular Prostheses |
| Prothrombin Time/Internationalized Normalized Ratio (PT/INR) Home Testing Monitor - Home Health |
| Respiratory Care Equipment - CCP |
| Respiratory Equipment and Supplies - Home Health |
| Subcutaneous Injection Ports - Home Health |
| Total Parenteral Nutrition (TPN) Services - Home Health |
| Wearable Cardiac Defibrillator |
| Wound Care Supplies and/or Systems - Home Health |

## Reimbursement/Billing Guidelines

9    Given that only DME that is not a benefit of Texas Medicaid fall within this policy, DME authorized under the Exceptional Circumstances provision must be requested under the appropriate miscellaneous code and must be authorized by TMHP in order for the provider to receive payment.

## Adjudication

10    Adjudication guidelines to not apply to this policy, nor do any specific edits and audits exist for this provision.

## Regulations

| |
|---|
| TAC Rule §354.1031 Medicaid Home Health Services - General |

| |
|---|
| TAC Rule §354.1033 Provider Participation Requirements |
| TAC Rule §354.1039 Home Health Services Benefits and Limitations |
| TAC Rule §354.1040 Requirements for Wheeled Mobility Systems |
| TAC Rule §354.1442 Out-of-State Provider Eligibility |
| TAC Rule §354.1185 Provider Compliance with Durable Medical Equipment (DME) Certification Requirements |

# TAB F


12357-B Riata Trace Parkway
Austin, TX 78727
1-800-414-3406

Date of Action: September 12, 2013

JESSICA LYNN LUKEFAHR

~~█████████████~~

~~█████████~~

K~~████████████████~~

**TMHP Reference Numbers**
Client Number: ~~████████~~
**Authorization Number: 9231607092**

Dear JESSICA LYNN LUKEFAHR,

The following service(s) requested by RUSSELL MEDICAL INC are **denied** for the reason(s) stated below.

| Date(s) of Service | Type of Service(s) Requested | Amount |
|---|---|---|
| 6/25/13-12/24/13 | Pwc Gp4 Std Mult Pow Opt S/B | 1 |
| 6/25/13-12/24/13 | Pwr Seat Elevation Sys | 1 |
| 6/25/13-12/24/13 | Gr24 Sealed Leadacid Battery | 2 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | W/C Manual Swingaway | 2 |
| 6/25/13-12/24/13 | Expandable Controller, Initl | 1 |
| 6/25/13-12/24/13 | Pwc Harness, Expand Control | 1 |
| 6/25/13-12/24/13 | Pwr Seat Combo W/Shear | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | Electro Connect Btw 2 Sys | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | Gen W/C Cushion Wdth < 22 In | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | W/C Component-Accessory Nos | 1 |
| 6/25/13-12/24/13 | Cushioned Headrest | 1 |
| 6/25/13-12/24/13 | Wheelchair Mngment Training | 8 |

The medical information received **does not support** the service requested based on:
The Texas Administrative Code, Title 1, Part 15, Chapter 354, Subchapter A, Division 3, Rule §354.1039 (a)(4)(D) states: "Medical equipment or appliances not listed in subparagraph (C) of this paragraph may, in exceptional circumstances, be considered for payment when it can be medically substantiated as a part of the treatment plan that such service would serve a specific medical purpose on an individual case basis."

The current Texas Medicaid Provider's Procedure Manual, Durable Medical Equipment, Medical Supplies and Nutritional Products Handbook, Section 2.2.2 states: Since there is no single authority, such as a federal agency that confers the official status of "DME" on any device or product, HHSC retains the right to make such determinations with regard to DME benefits of

Texas Medicaid. DME benefits of Texas Medicaid must have either a well-established history of efficacy or, in the case of novel or unique equipment, valid, peer-reviewed evidence that the equipment corrects or ameliorates a covered medical condition or functional disability.

The current Texas Medicaid Provider's Procedure Manual, Durable Medical Equipment, Medical Supplies and Nutritional Products Handbook, Section 2.2.15.2.1 states: A wheelchair may be prior authorized for short-term rental or for purchase with documentation supporting medical necessity and an assessment of the accessibility of the client's residence to ensure that the wheelchair is usable in the home.

You have asked for a power wheelchair with tilt and recline and a standing feature. You are twenty-six years old and have spastic quadriplegia, dystonia, and cerebral palsy. You work at a local museum. You live by yourself and have help with getting your meds, bathing and dressing. You are able to stand for five minutes, three times a day using a walker. But, you are unable to stand long enough with your walker for the standing to be deemed therapeutic or helpful. With a seat-elevator you are able to transfer in and out of your current power wheelchair by yourself. The papers sent state that you would be able to reach shelves without help if you had a standing feature on a wheelchair and this would allow you to do librarian tasks. The papers sent in show you have very limited upper and lower body strength, you have problems with your muscle tone and you tire easily.

The papers sent did not show that you are able to tolerate standing for longer periods of time and this limits your ability to benefit from standing. The papers sent did not show you are able to perform tasks over and over again using your arms against gravity. The papers sent show you also have problems with your muscle tone and muscle spasms and this limits the range in your arms and hands and ability to move and use your upper body. Because you are able to transfer yourself in and out of your wheelchair using a wheelchair seat elevator, you would be able to use a static stander to obtain any medical benefits that might be obtained from a standing program. The papers did not state why a static stander that you could transfer into and out of would not meet your medical needs. The papers sent do not show you have a muscle or nerve condition that gets increasingly worse as you get older. The review of the papers sent in show the main reason for requesting a standing power wheelchair was to help you progress at work. The main reason was not for the treatment of your medical condition.

After reviewing and studying the clinical points of your request and your special medical needs it was found you may have a medical need for a power wheelchair without a standing feature and a static standing system to meet both your medical and mobility needs. This equipment may be considered for you through Texas Medicaid if requested. The papers sent failed to support medical necessity for the standing feature (and its parts as part of the power wheelchair requested) or that the standing feature would serve a specific medical purpose for you. Because the standing feature on the power wheelchair would not serve a specific medical purpose for you, it could not be approved under the exceptional circumstances provision of 1 Texas Administrative Code §354.1039(a)(4)(D) as requested by your provider. Because the standing feature cannot be separated from the power wheelchair requested the power wheelchair requested could not be approved.

Your provider has also been sent a letter. You may want to talk about this decision with your provider to make sure your provider sent in all of the papers needed to support your request.

*Auth848·dot*

0364

000059

The above actions are supported by the following statutory and regulatory authority:
42 Code of Fed Reg, Sec 440.70 and 441.15    1 TX Admin. Code, Sec 354.1039

The medical information **does support approval** of the following services:

| Date(s) of Service | Type of Service(s) Approved | Amount |
|---|---|---|
| | | |

Your provider has been notified of this decision. If you disagree with this decision, you have the right to a fair hearing. You may ask to have the hearing conducted either in person, by telephone, or using written records only (you would not be required to participate in person).

You must request a fair hearing within 90 days of the date of action shown above. If you do not request a fair hearing by **December 11, 2013**, you will lose your right to have a hearing. If you do request a hearing, you may represent yourself or have another person represent you, including a lawyer or someone else of your choosing.

If your provider asked for skilled nursing visits, occupational therapy, physical therapy, speech therapy, or behavioral health therapy, and you request a fair hearing within 10 days from the date of this agency action notice, you will continue to receive these services at the previously approved level until the hearing officer makes a decision.

Before the hearing, a packet of information and materials will be sent to you. The packet will include the date of the hearing and a copy of your case file and all of the documents Texas Medicaid will use at the hearing. The packet will also contain a description of what will happen at, and after, the hearing. You have the right to request an accommodation for disability including interpreter services and the right to request a language interpreter.

If you have questions about the fair hearing process or want to request a fair hearing, you may call 1-800-414-3406 free of charge, Monday through Friday, 7 A.M. to 7 P.M. You may also request a fair hearing by writing to the following address:

Texas Medicaid & Healthcare Partnership
Attention: Client Notification Unit
PO Box 201305
Austin, Texas 78759

If you have any questions about this letter, you may call the same toll-free number at 1-800-414-3406.

If you need assistance obtaining medical care, you may be eligible for medical case management services. For more information about medical case management, you may contact the THSteps Outreach and Information Hotline free of charge at 1-877-THSteps (1-877-847-8377).

000060

# TAB G



**STEPHEN YELENOSKY**
Judge
(512) 854-9374
(512) 854-4540

**DANA LEWIS**
Staff Attorney
(512) 854-9892

**ANGELA BURKES**
Court Operations Officer
(512) 854-9712

**345TH DISTRICT COURT**
TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767

**ALBERT ALVAREZ**
Official Reporter
(512) 854-9373

**PATRICIA WINKLER**
Court Clerk
(512) 854-4309

April 28, 2015

Ms. Maureen O'Connell
Southern Disability Law Center
1307 Payne Avenue
Austin, Texas 78757
*VIA FAX: (512)458-5850*

Ms. Kara Holsinger
Assistant Attorney General
Administrative Law Division
P.O. Box 12548, Capítol Station
Austin, Texas 78711
*VIA FAX: (512) 320-0167*

Re: Cause No. D-1-GN-14-002158; *Jessica Lukefahr vs. Texas health and Human Services Commission in the 345th Judicial District Court, Travis County Texas*

Dear Counsel:

Although I could simply advise you of my intended ruling for the purpose of preparing orders, it is my habit to work to the answer by drafting a letter.   I send it to you to satisfy your curiosity about some of my reasoning, not to invite further argument.  Reasons given are not exclusive of other reasons I may have, will not be incorporated in any order, and do not limit the bases of support for any order.

**Due Process**

Due process, as embodied in state and federal Medicaid law, requires that a denial letter provide the reasons for denial.   When a denial is challenged, the Medicaid authority has the burden to prove to the Hearings Officer that the reasons given are supported by a preponderance of the evidence.  If the Hearings Officer concludes that they are, the Hearings Officer's Findings of Fact must be sufficient to serve the purpose assigned to them.  Upon judicial review the Medicaid authority is required to identify the substantial evidence in the record that supports the Hearings Officer's decision.  The reasons for denial must be a common thread that runs through each of these stages.  Without that, the Medicaid client cannot adequately prepare for a fair hearing, judicial review, or appeal, and there is no due process.

Case # D-1-GN-14-002158



004001946



221

In Medicaid proceedings, once an individual's physician prescribes an item attesting to its medical necessity and the Medicaid client or provider submits any required supporting material,[1] the burden is on the Medicaid authority to prove that the item is not medically necessary. Going into a fair hearing, the Medicaid authority is prepared to present its proof, and the Medicaid client must be able to prepare to meet that proof with cross-examination, evidence and argument. If the reasons given in a denial letter do not constrain the Medicaid authority, the Medicaid client cannot adequately prepare because she must anticipate every possible reason the authority might give for denial. Unless the letter constrains, it is no more than notice to the Medicaid client that she has lost, with an explanation to follow in the hearing.

Here, the denial letter gave specific reasons for THHSC's conclusion that, despite the treating physician's determination and prescription, the DME requested was not medically necessary.[2] In conducting the fair hearing, the Hearings Officer was not required to exclude irrelevant evidence because the Rules of Evidence do not apply. But he was required to consider only the reasons given in the letter of denial and the evidence he found in support of them. He did not. None of his 12 Findings of Fact relate to the reasons given in the denial letter.[3]

## Findings of Fact

Of the twelve Findings of Fact, six merely recite the procedural history of the DME request. Of the remaining six, one references the absence of a prior authorization evaluation that was not required or related to medical necessity. Two others identify Ms. Lukefahr's current wheelchair and the inseparability of the standing feature on the wheelchair requested, both of which are immaterial. (Ms. Lukefahr has not requested a wheel chair *without* a mobile stander.) Two *support* Ms. Lukefahr's position. The first concedes that a static stander is a medical necessity for Ms. Lukefahr, which negates any argument that a tilt/recline, a posture control walker, or other non-standing feature will suffice. It narrows the question to whether a static stander suffices or, instead, only a mobile stander meets medical necessity. The second favors Ms. Lukefahr by conceding she can fully operate the requested wheelchair. The final Finding recites the conclusion of THHSC's OMD that the requested chair was not medically necessary. This is not a factual finding arising from the hearing; it is a pre-existing fact and *the reason for* the hearing. Under Medicaid law, neither the treating physician's determination of medical

---

[1] Here, the Medicaid client provided the prescription and supporting material. THHSC requested additional material, received it, and stated the request for DME was complete.

[2] Neither side argued a meaningful distinction between the language of medical necessity for a covered item and that for "exceptional circumstances." Because the *DeSario* letter permits an approved list only for "administrative convenience" to avoid an "extensive application process" for every request, it implies that documentation may be more extensive, but the ultimate question of medical necessity must be the same.

[3] One Finding of Fact states Ms. Lukefahr "does not currently have a static stander for use at her home and was not evaluated for prior authorization for one." Not only was this absent from the denial letter, Ms. Lukefahr had no reason to anticipate that it would arise in the hearing. There is no requirement for a "prior authorization evaluation," and Ms. Lukefahr had her physician's evaluation, her therapist's evaluation, and the assessment from the Qualified Rehabilitation Provider.

necessity nor the OMD's determination is dispositive. If it were, a hearing would be senseless. On the preponderance of the evidence standard the Hearings Officer was required to apply and with the burden of proof THHSC was required to meet, simply reciting the OMD's determination is insufficient. The twelve Findings do not provide any underlying facts to support the conclusory statement that "[b]ased on the findings of fact and applicable authority ... the exceptional circumstances were not met." Moreover, they do not give Ms. Lukefahr notice of the reasons and evidence from the record that THHSC would rely upon in judicial review.

**Reasoned Decision**

Even a decision supported by substantial evidence may, in the absence of a reasoned decision, be arbitrary and capricious. As just noted, the Hearings Officer recites *that the OMD concluded* the medical information failed to substantiate medical necessity. Neither in that Finding nor any other does the Hearings Officer state that *he* has concluded, through his own reasoning applied to the evidence, that medical necessity was unsubstantiated by a preponderance of the evidence. It is not clear that the Hearings Officer recognized this as his responsibility. At the beginning of the hearing, he explained his role in saying that if he were to sustain the denial it "will mean that I determined that TMHP complied with all its regulations and guidelines."[4] He later repeats that description of his role. He does not say his role includes determining whether HHSC had proven one or more of the reasons for denial or even the lack of medical necessity. Likewise, the Reviewing Attorney stated, in the Administrative Review, that its purpose was "to determine whether or not the Hearings Officer followed the applicable laws, procedures, and program rules...." No mention is made of the Reviewing Attorney's responsibility to review "the hearings record upon which it [the hearing decision] is based for errors of law *and errors of fact* using the 'preponderance of evidence' standard." The next 5 pages of the Review recite procedural history and policy as did the Hearings Officer's decision, and then Findings of Fact that are word for word the same as the Hearings Officer's. It is unclear if the Reviewing Attorney is making the same findings or referring to the ones previously made. In any event, the only conclusions that are clearly those of the Reviewing Attorney are "based on a preponderance of the evidence presented, substantial evidence exists[5] to support the agency's action .... Based on my review of this matter, I have determined that the Hearings Officer developed the record appropriately, and the record reflects that Appellant's denial ... was in accordance with applicable law and policy."

**Substantial Evidence**

Of the reasons given for denial in the denial letter, THHSC has abandoned some and Ms. Lukefahr has demonstrated that there is no substantial evidence to support those remaining. As noted above, THHSC does not contest Ms. Lukefahr's medical need for a static stander to

---

[4] The Texas fair hearing rules require the Hearings Officer to make "a decision based on the evidence presented at the hearing" *in addition to* determining "compliance with statutes, policies, or procedures."

[5] This conflates two different standards of review. The Reviewing Attorney is to apply the same preponderance of the evidence standard that the Hearings Officer applies. It is this court that applies the lesser standard of substantial evidence.

ameliorate her diagnosed conditions,[6] and even if it did, there is no evidence to contradict her treating physician's assessment that she "has a medical need to stand numerous times throughout the day to avoid the secondary conditions that result from prolonged wheelchair sitting." The question for the court then is reduced to whether there is substantial evidence to support THHSC's claim that a static stander can meet her medical needs or to support its claim that she is physically incapable of benefitting from a mobile stander. There is no evidence rebutting her treating physician's statement that she would need assistance from a care provider to use a static stander or the fact that she does not have a care provider throughout the day. THHSC's argument is that this is a "matter of convenience."[7] Care providers are not inconvenient; they are *unavailable* to assist her to stand numerous times throughout the day. As for Ms. Lukefahr's physical capability, there is no evidence to contradict her physician's statement that Ms. Lukefahr can stand long enough *with a mobile stander* to obtain a therapeutic benefit. The only evidence is that Ms. Lukefahr no longer has the ability to stand long enough with her posture control walker.

I will reverse the decision of THHSC. Please prepare an order.

Sincerely,

Stephen Yelenosky
Judge, 345th District Court

SY/ab

---

[6] THHSC's brief, at page 24, incorrectly states that "osteopenia, constipation, and dysmenorrhea are not medical diagnoses as provided by her treating physician. " A.R. 88, 89.

[7] As for the contention that the primary purpose is to help Ms. Lukefahr progress on her job, any perceived purpose unrelated to medical necessity should be disregarded entirely. What is irrelevant cannot help or hurt a showing of medical necessity.

# TAB H



**DEPARTMENT OF HEALTH & HUMAN SERVICES**
**Health Care Financing Administration**

Center for Medicaid and State Operations
7500 Security Boulevard
Baltimore, MD 21244-1850

September 4, 1998

Dear State Medicaid Director:

We have received a number of inquiries regarding coverage of medical equipment (ME) under the Medicaid program in light of the ruling of the United States Court of Appeals for the Second Circuit in DeSario v. Thomas. In that case, the court examined the circumstances under which a State may use a list to determine coverage of ME and offered its interpretation of HCFA's policies. We have concluded that it would be helpful to provide States with interpretive guidance clarifying our policies concerning ME coverage under the Medicaid program and the use of lists in making such coverage determinations. This guidance is applicable only to ME coverage policy.

As you know, the mandatory home health services benefit under the Medicaid program includes coverage of medical supplies, equipment, and appliances suitable for use in the home (42 C.F.R. § 440.70(b)(3)). A State may establish reasonable standards, consistent with the objectives of the Medicaid statute, for determining the extent of such coverage (42 U.S.C. § 1396a(a)(17)) based on such criteria as medical necessity or utilization control (42 C.F.R. § 440.230(d)). In doing so, a State must ensure that the amount, duration, and scope of coverage are reasonably sufficient to achieve the purpose of the service (42 C.F.R. § 440.230(b)). Furthermore, a State may not impose arbitrary limitations on mandatory services, such as home health services, based solely on diagnosis, type of illness, or condition (42 C.F.R. § 440.230(c)).

A State may develop a list of pre-approved items of ME as an administrative convenience because such a list eliminates the need to administer an extensive application process for each ME request submitted. An ME policy that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list, is inconsistent with the federal law discussed above. In evaluating a request for an item of ME, a State may not use a "Medicaid population as a whole" test, which requires a beneficiary to demonstrate that, absent coverage of the item requested, the needs of "most" Medicaid recipients will not be met. This test, in the ME context, establishes a standard that virtually no individual item of ME can meet. Requiring a beneficiary to meet this test as a criterion for determining whether an item is covered, therefore, fails to provide a meaningful opportunity for seeking modifications of or exceptions to a State's pre-approved list. Finally, the process for seeking modifications or exceptions must be made available to all beneficiaries and may not be limited to sub-classes of the population (e.g., beneficiaries under the age of 21).

In light of this interpretation of the applicable statute and regulations, a State will be in compliance with federal Medicaid requirements only if, with respect to an individual applicant's request for an item of ME, the following conditions are met:

- The process is timely and employs reasonable and specific criteria by which an individual item of ME will be judged for coverage under the State's home health services benefit. These criteria must be sufficiently specific to permit a determination of whether an item of ME that does not appear on a State's pre-approved list has been arbitrarily excluded from coverage based solely on a diagnosis, type of illness, or condition.

- The State's process and criteria, as well as the State's list of pre-approved items, are made available to beneficiaries and the public.

- Beneficiaries are informed of their right, under 42 C.F.R. Part 431 Subpart E, to a fair hearing to determine whether an adverse decision is contrary to the law cited above.

We encourage you to be cognizant of the approval decisions you make regarding items of ME that do not appear on a pre-approved list, to ensure that the item of ME is covered for all beneficiaries who are similarly situated. In addition, your list of pre-approved items of ME should be viewed as an evolving document that should be updated periodically to reflect available technology.

HCFA's Regional Offices will be monitoring compliance with the statute and regulations that are the subject of this guidance. Any questions concerning this letter or the ME benefit may be referred to Mary Jean Duckett of my staff at (410) 786-3294.

Sincerely,

/s/

Sally K. Richardson

Director

cc:

All HCFA Regional Administrators
All HCFA Associate Regional Administrators for Medicaid and State Operations
Lee Partridge  American Health Services Association
Joy Wilson  National Conference of State Legislatures
bcc: HCFA Press Office CMSO Senior Staff

# TAB I



SCOTT DETGEN, by His Next Friend, L.C. Detgen; JUANITA
BARRAZA, by Her Next Friend, Yolanda Villareal; BRANDON
DOYEL; JOSHUA VARGAS, Plaintiffs-Appellants, versus DR. KYLE
JANEK, in His Official Capacity as Executive Commissioner,
Texas Health and Human Services Commission,
Defendant-Appellee.

No. 13-10396

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

752 F.3d 627; 2014 U.S. App. LEXIS 9107

May 16, 2014, Filed

**PRIOR HISTORY:** [**1]
Appeal from the United States District Court for the Northern District of Texas.
Detgen v. Janek, 945 F. Supp. 2d 746, 2013 U.S. Dist. LEXIS 34532 (N.D. Tex., 2013)

**COUNSEL:** For SCOTT DETGEN, by his next friend, L.C. Detgen, JUANITA BARRAZA, by her next friend, Yolanda Villareal, Brandon Doyel, Joshua Vargas, Plaintiffs - Appellants: Maureen A. O'Connell, Southern Disability Law Center, Austin, TX; Lewis Alan Golinker, Assistive Technology Law Center, Ithaca, NY.

For DR. KYLE JANEK, in his official capacity as Executive Commissioner, Texas Health and Human Services Commission, Defendant - Appellee: Jonathan F. Mitchell, Douglas D. Geyser, Office of the Solicitor General, Austin, TX; Erika M. Kane, Office of the Attorney General, Austin, TX.

**JUDGES:** Before JONES, SMITH, and OWEN, Circuit Judges.

**OPINION BY:** JERRY E. SMITH

**OPINION**

[*629] JERRY E. SMITH, Circuit Judge:

The four plaintiffs are Medicaid beneficiaries with near total physical disabilities, requiring constant personal assistance and care. On the advice of professionals, they asked Texas's Health and Human Services Commission to pay for ceiling lifts, which are classified as durable medical equipment ("DME"). Such lifts are expensive but would allow the disabled beneficiaries to move with straps attached to ceilings. Texas denied coverage under a categorical [**2] exclusion in the state's implementing Medicaid regulations. The district court granted summary judgment for the state on the ground that, so long as federal monies were not available to reimburse it, it did not need to provide the lifts.

The Center for Medicare and Medicaid Services ("CMS") has since offered guidance, however, that federal financial participation would be available. In addition to appealing the judgment, the plaintiffs move this court to vacate it for reconsideration. In the appeal, they maintain that the state's categorical exclusions are preempted by federal law or otherwise violate their procedural due-process rights. Texas responds that categorical exclusions are not preempted and, moreover, that a state can never violate the Medicaid Act and that the plaintiffs do not have a private cause of action to enforce it.

Under binding precedent, these plaintiffs have an implied private cause of action under the Supremacy Clause to pursue this challenge. We additionally note that the state must comply with the requirements of the Medicaid Act, but the Act does not preempt the state's categorical exclusions. We therefore affirm the summary judgment and deny the motion to [**3] vacate.

I.

The plaintiffs assert that they have an implied cause of action to pursue their claims. Normally a cause of action must be found in a statute: "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001). The plaintiffs' theory of an implied cause of action does not depend on any rights-creating language in the Medicaid Act; rather, they rely on the [*630] Supremacy Clause.[1] The Supreme Court recently dodged the question--incidentally in a case involving the Medicaid Act--whether the Supremacy Clause provides a cause of action itself in the absence of a statutory private cause of action. *See Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S.

Ct. 1204, 182 L. Ed. 2d 101 (2012).

1   Plaintiffs rely on 42 U.S.C. § 1983 for their due-process claims.

In light of the Court's failure in *Douglas* to hold to the contrary, this appeal is governed by *Planned Parenthood of Houston & Southeast Texas v. Sanchez ("PPHST")*, 403 F.3d 324, 330-35 (5th Cir. 2005). There this court held that the Supremacy Clause confers an implied private cause of action to enforce all Spending Clause legislation by bringing preemption actions.[2] [**4] The state is correct that since then, the Supreme Court has held that certain federal statutes contain no private right of action,[3] but that was true when *PPHST* was decided. *See, e.g., Sandoval*, 532 U.S. at 288-93. In *Sandoval, Horne*, and *Brunner*, it appears that the plaintiffs never made the alternative claim that if the statute does not provide a cause of action, the Supremacy Clause does.[4]

2   *PPHST*, 403 F.3d at 333 ("While [prior cases] do not directly address the issue of whether a valid cause of action existed [under the Supremacy Clause], we assumed that one did. Today we hold that one does. Other circuits have similarly recognized an implied cause of action to bring preemption claims seeking injunctive and declaratory relief even absent an explicit statutory claim.").

3   *See, e.g., Horne v. Flores*, 557 U.S. 433, 456 n.6, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (finding no private cause of action to enforce the No Child Left Behind Act); *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6, 129 S. Ct. 5, 172 L. Ed. 2d 4 (2008) (suggesting no private cause of action to enforce the Help America Vote Act).

4   The Tenth Circuit has only recently come to the opposite

conclusion. *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 12-3178, 747 F.3d 814, 2014 U.S. App. LEXIS 5467, 2014 WL 1201488 (10th Cir. Mar. 25, 2014) [**5] (holding that the Supremacy Clause does not provide a private cause of action).

## II.

The state makes the alternative argument that even if plaintiffs have a cause of action, it is impossible for a state to violate the Medicaid Act. The state analogizes the Act to legislation tying highway funds to a certain maximum speed limit: A state may lawfully establish a higher limit, but it will forgo funds. Thus, the state claims, here it may lawfully pass nonconforming Medicaid legislation at the risk of losing federal funds, but not at the risk of private lawsuits. It reasons that unlike other legislation that can preempt state law, this federal law does not include language such as "shall," commanding a state to perform a certain function.

The provision on which plaintiffs rely, however, does contain such language: "A State plan for medical assistance *must* . . . include reasonable standards . . . for determining eligibility . . . . " 42 U.S.C. § 1396a(a)) (emphasis added). Additionally, several courts, including the Supreme Court, have held that once a state accepts federal funding, it must conform to the requirements of the relevant federal law, including the Medicaid Act: "Although participation [**6] in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae*, 448 U.S. 297, 301, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980); *see also Hope Med. Grp. for Women v. Edwards*, 63 F.3d 418, 421 (5th Cir. 1995).

[*631] Indeed, a contrary ruling

would contradict *PPHST*, which held that there is an implied private cause of action under the Supremacy Clause to enforce all Spending Clause legislation. Under the state's theory, the holding in *PPHST* would have been totally unnecessary because it is impossible for a state to violate a Spending Clause statute, so a private cause of action does plaintiffs no good. We agree that if no private cause of action existed, it would be up to the federal government to decide how to enforce compliance, and it could choose to withhold funds. That, indeed, is how at least two Supreme Court Justices would interpret the Medicaid Act.[5] But this court in *PPHST*, 403 F.3d at 332 & n.34, specifically discounted those two views in coming to its conclusion. Although it is quite possible, as Texas maintains, that no state has made such an argument, *PPHST* necessarily (even if implicitly) directs that when a state violates the federal [**7] requirements of the Medicaid Act, a private plaintiff can sue the state to enforce those requirements.

[5] *See Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 675, 123 S. Ct. 1855, 155 L. Ed. 2d 889 (2003) (Scalia, J., concurring in the judgment) ("I would reject petitioner's statutory claim on the ground that the remedy for the State's failure to comply with the obligations it has agreed to undertake under the Medicaid Act is set forth in the Act itself: termination of funding by the Secretary of the Department of Health and Human Services. Petitioner must seek enforcement of the Medicaid conditions by that authority . . . ." (internal citations omitted)); *id.* at 682 (Thomas, J., concurring in the judgment) ("[T]he Secretary's mandate from Congress is to conduct, with greater expertise and resources than courts, the

inquiry into whether [state law] upsets the balance contemplated by the Medicaid Act. Congress' delegation to the agency to perform this complex balancing task precludes federal-court intervention on the basis of obstacle pre-emption--it does not bar the Secretary from performing his duty to adjudge whether [the State's law] upsets the balance the Medicaid Act contemplates and withhold approval or funding [**8] if necessary.").

III.

Regarding the merits, the basis for this challenge is the requirement that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan . . . which are consistent with the objectives of this subchapter," 42 U.S.C. § 1396a(a)(17), and the implementing regulation requiring that each provided service "must be sufficient in amount, duration, and scope to reasonably achieve its purpose," 42 C.F.R. § 440.230(b). The plaintiffs rely on this statutory language, an agency guidance letter, and precedent to contend that the state's categorical exclusion is not a "reasonable standard."

States have broad discretion to implement the Medicaid Act: "This [statutory] language confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal v. Doe*, 432 U.S. 438, 444, 97 S. Ct. 2366, 53 L. Ed. 2d 464 (1977). In combination with the presumption against preemption and its concomitant clear-statement rule, the discretion conferred in *Doe* leaves little doubt that we [**9] must affirm the summary judgment if the statutory language does not plainly

prohibit categorical exclusions.

As we have noted, the statute requires that "[a] State plan for medical assistance must . . . include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan." Additionally, the Medicaid Act requires a state program to cover "home health services," 42 U.S.C. § 1396a(a)(10)(D), which [*632] include "[m]edical supplies, equipment, and appliances suitable for use in the home," 42 C.F.R. § 440.70(b)(3). But, as plaintiffs acknowledge, the Act does not identify the specific equipment that a state must offer, and the scope of offerings is governed by the "reasonableness" standard in the statute. Plaintiffs maintain that the categorical exclusion of ceiling lifts is unreasonable because ceiling lifts fall within the *state*'s definition of DME and are medically necessary.

The state categorically excludes such lifts from coverage for a number of reasons. Although the district court specifically relied on the lack of federal financial assistance for its ruling--a ruling that is undermined by subsequent CMS guidance to the contrary--the state [**10] also flatly excludes such lifts because they require structural modifications to residences. Texas also excludes from the definition of DME, in the home services category, ramps, elevators, stair-well lifts, and platform lifts. Further, the state explains in its brief that it provides more cost-effective alternatives such as "transfer boards, freestanding track (or 'Niklas') lifts, transfer chair systems for use with the bath or commode, and manually or electronically operated floor lifts (also known as 'Hoyer' lifts)." The ceiling lifts at issue here would cost the state between $15,000 and $20,000, and even the insurers Aetna and Cigna deny coverage for such equipment.

It is hardly unreasonable for a state to exclude--even categorically--any medical device whose purpose can be served by a more cost-effective method. Not only has Texas not violated the plain language of the statute, but also the reasonableness standard in the text likely supports its imposition of *reasonable* categorical exclusions. The plaintiffs' notion that it would be unreasonable for a state not to provide particular equipment *within its definition* of DME sounds plausible, except that the state can choose *by* [**11] *definition* to exclude ceiling lifts.[6] Moreover, a categorical exclusion based on the availability of cost-effective alternatives cannot mean that the state has denied a medically necessary device, even if the statute did impose such a standard.

> 6    The state defines DME at a high level of generality, saying that it includes equipment with a projected term of use of more than one year or if the reimbursement is over $1,000. 1 TEX. ADMIN. CODE § 354.1031(b)(2). But Texas's Medicaid Provider Procedures Manual explains that not all DME will be considered reimbursable as a home health service; rather, the DME must meet a list of criteria after which it "may" be a covered benefit. Section 2.2.14.27 of the manual specifically excludes many DMEs, including home modifications.

Plaintiffs rely heavily on a 1998 guidance letter from CMS's predecessor (the "*DeSario* letter") to support their assertions. The letter explains that a state may "develop a list of pre-approved items of [medical equipment] as an administrative convenience," but a "policy that provides no reasonable and meaningful procedure for requesting items that do not appear on a State's pre-approved list [ ] is inconsistent with federal [**12] law."[7]

> 7    Letter from Sally K. Richardson, Director, Ctr. for Medicaid and State Operations, Dep't of Health & Human Servs. to State Medicaid Directors (Sept. 4, 1998), *available at* http://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/SMD090498.pdf.

Deference to the guidance letter is not an issue, because the state has not violated its requirements: The letter says only that if a state has a pre-approved list, there must be some way to prove need for items not on it. This letter says nothing about the possibility of a state's deciding that some items shall be on a "never approved [*633] list," that is, that some items may be categorically excluded. It would be perfectly consistent with federal law and this letter to adopt a list of pre-approved devices for convenience and a list of categorical exclusions if based on reasonable grounds, such as the availability of more cost-effective alternatives, and to permit a beneficiary to demonstrate need for an item on neither list. In short, nothing in the *DeSario* letter prohibits categorical exclusions, which might even be eminently reasonable and thus consistent with the statutory language.

Contrary to the plaintiffs' assertions, no decision [**13] of this court prohibits categorical exclusions, and none of the cases they cite is on point. Our decision in *Rush v. Parham*, 625 F.2d 1150, 1157 n.12 (5th Cir. 1980), merely stands for the proposition that a state cannot deny a treatment solely based on "diagnosis, type of illness, or condition," which is an explicit requirement of the Code of Federal Regulations. As for *Hope Medical Group*, an important distinction is that there the treatment in question was generally available, but the state had limited its availability for non-medical

reasons. *See Hope Med. Grp.*, 63 F.3d at 427. That situation is thus distinguishable from a categorical exclusion of an item, which might be based on a reasonable ground such as the availability of more cost-effective alternatives.

The plaintiffs rely most heavily on *Fred C. v. Texas Health & Human Services Commission*, 988 F. Supp. 1032 (W.D. Tex. 1997), *aff'd*, 167 F.3d 537 (5th Cir. 1998). Plaintiffs aver that that case stands for the proposition that if the state's Medicaid program provides a medical service or device for an individual under age twenty-one, it must also provide that service, if medically necessary, to a person over that age. Such an [**14] outcome would benefit the plaintiffs because the state provides ceiling lifts to those younger than twenty-one.

As the state contends here, however, even if *Fred C.* could be read for that proposition, it would be absurd: The states are *required* by federal law to provide any and all services to individuals under twenty-one if medically necessary, "whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5). But if states do so and therefore must also so provide for anyone over twenty-one, the special federal rule for the provision of more expansive benefits to children would be unnecessary because the standards for children and the standards for adults would be collapsed into the same standard. The plaintiffs' reading would render superfluous the language "whether or not such services are covered under the State plan," which suggests that the states must be able to offer *some* benefits to children that they do not have to offer adults.

We need not read *Fred C.* as plaintiffs wish. There the district court had held that a device provided for children under twenty-one must also be provided to adults as medically necessary. On the second appeal, we affirmed because [**15] the district court was governed by the "law of the case" as established by a previous short per curiam opinion, *Fred C. v. Texas Health & Human Services Commission*, 117 F.3d 1416 (5th Cir. 1997). In that first appeal the court had remanded for a determination of whether the plaintiff was even eligible for home services; we implied that if that requirement was met, he would be eligible. The court never actually addressed the merits of the district court's age-based reasoning, and it never *held* (although it may have assumed) as the district court did that because the device was provided for children under twenty-one, it must also be provided to adults.

Moreover, we later noted that, although a state must provide certain benefits to children under twenty-one, it need not provide those same benefits to adults:

> [*634] Further, the § 1396d(a)(7) category of home health care services is an optional, not a mandatory, category of medical assistance. § 1396a(a)(10)(A). Thus, the state was not required to provide this category of care and services to individuals over the age of twenty-one at all. . . . CMS's approval of the effective exclusion indicates only that the exclusion may be an appropriate limitation [**16] on the scope of the home health care benefit as it applies to recipients over twenty-one years of age. It does not express or imply that CMS has approved an exclusion applicable to EPSDT benefits [for children].

*S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 597 (5th Cir. 2004). Therefore, plaintiffs' reading of *Fred C.* is not how this court has subsequently interpreted the law respecting Medicaid, and it is not how we construe it now.

Because plaintiffs have not shown an entitlement to the ceiling lifts, their due process claims fail as well. The summary judgment is AFFIRMED, and the motion to vacate is DENIED.